## ECOS ELECTRONICS CORPORATION, an Illinois corporation, Plaintiff-Appellant,

### v.

## UNDERWRITERS LABORATORIES, Defendant-Appellee.

### No. 83–2734.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1984.

Decided Aug. 29, 1984.

As Amended Oct. 10, 1984.

---

James P. Chapman, Chicago, Ill., for plaintiff-appellant.

Victor E. Grimm, Bell, Boyd & Lloyd, Chicago, Ill., for defendant-appellee.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*

PELL, Circuit Judge.

Plaintiff ECOS Electronics Corporation (ECOS) filed an antitrust suit against Underwriters Laboratories (UL) and a number of other defendants. The district court granted summary judgment in favor of UL and found no just reason to delay entry of judgment for UL pursuant to rule 54(b) of the Federal Rules of Civil Procedure. While the case proceeds in the district court against the remaining defendants, ECOS appeals the district court's grant of summary judgment to UL.

I Facts

ECOS manufactures a device known as an outlet circuit tester, which in essence serves to test the condition of an electrical outlet. A similar device is manufactured by Daniel Woodhead Company (Woodhead), which is a defendant in plaintiff's suit but not involved in this appeal. ECOS claims that its tester is technologically superior to the Woodhead tester. Unfortunately for ECOS, the superior technology carries with it a high price tag. As a consequence consumers will only purchase an ECOS tester if it appears that the advanced technology is necessary. Consumers, apparently, have not found the high price of an ECOS tester justified by its superior performance and have instead purchased the inferior, albeit cheaper, Woodhead tester. ECOS blamed its failure to capture the market for testers on UL, among others, and brought suit alleging an unreasonable restraint of trade and monopolization. To understand ECOS's claim, which appears unique in the annals of antitrust litigation, it is first necessary to examine the functioning of UL and its effect on the circuit tester market.

* William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

UL is an independent, not-for-profit corporation. UL investigates devices such as circuit testers with respect to hazards affecting life and property. UL is managed by 18 trustees elected from its membership, none of whom may be associated with a manufacturer or vendor of products investigated by UL. The purpose of UL's investigation of a product is only to determine whether the product meets the minimum safety level specified by UL's standards. UL does not assess the relative quality of products, nor does it compare the features found on competing products.

UL establishes standards for the various products it tests. When a manufacturer submits a product that is not covered by an existing standard, UL engineers develop a new standard. The standard will be revised as additional products are submitted. After review and comment by interested persons, UL publishes the standard in a document available to the public. UL also submits standards to the American National Standards Institute (ANSI), which acts as a clearinghouse for organizations developing standards. Products that meet UL's standard are listed by UL and may carry a UL designation on them.

ECOS claims that its inability to compete successfully in the circuit tester market stems from UL's development of a standard approving Woodhead testers and other inexpensive testers. In 1964 Woodhead submitted a circuit tester to UL's Chicago office. The Woodhead tester was a simple device that could be plugged directly into an electrical outlet. UL refused to list the Woodhead tester because it gave incorrect indications of the conditions in a circuit. In 1972 Woodhead submitted a modified version of its circuit tester, which UL approved although UL engineers were aware that the tester could not detect all wiring conditions. After consultation between UL's Chicago, Illinois and Melville, New York offices, UL decided to list Woodhead-type testers provided that the manufacturers disclosed the limited ability of the tester. Woodhead and Harvey Hubbell, Inc., which manufactured a Woodhead-type test-

er, agreed to provide disclosures with their testers.

ECOS complained to UL about the standard set for testers, UL Standard 1436, and claimed that Woodhead-type testers did not work and should not be listed. UL considered ECOS's comments, but declined to change the standard as UL felt that Woodhead-type testers were useful despite their limitations. UL expressed a willingness to investigate ECOS testers, but ECOS declined to submit any for investigation. ECOS claimed in its complaint that Standard 1436 by its terms precluded listing an ECOS tester as it drew more current than allowed by the standard. Documents submitted by UL in support of its motion for summary judgment demonstrated that UL informed ECOS that UL was willing to consider listing an ECOS tester despite the variation from the standard. UL explained that a complex tester, such as ECOS claimed to manufacture, would be considered outside the scope of the standard and hence not bound by the standard's limits. UL also explained that the standard would not be applied if the product met the goal of the standard, although not meeting all of the requirements of the standard. The district court found that UL established ECOS's failure to submit its tester. While ECOS claims that the court erred in this finding, a claim that is without merit, it also claims that its failure to submit a tester is irrelevant as its claim rests on UL's listing of Woodhead testers, not on refusal to list ECOS testers.

## II  The Lawsuit

ECOS filed suit seeking damages and injunctive relief under the Clayton Act, 15 U.S.C. §§ 15, 26, claiming that UL and the other defendants were guilty of conspiring to restrain competition in violation of the Sherman Act, 15 U.S.C. § 1. ECOS also alleged that Woodhead was guilty of monopolization in violation of 15 U.S.C. § 2. ECOS's claim against UL can be summarized as follows: By listing Woodhead testers UL convinced consumers that these testers were adequate for testing circuits

and that the sophisticated technology employed by ECOS was superfluous. Consumers buy the cheapest UL approved tester, so by listing Woodhead testers UL and Woodhead conspired "to imbed into the outlet circuit tester market technically inferior outlet circuit testers." According to ECOS, the UL listing allows Woodhead testers to gain a competitive advantage over more sophisticated equipment and deprives manufacturers of sophisticated testers "of an unfettered opportunity to offer their product in the market and to obtain the benefit of lower costs resulting from economies of scale." ECOS explicitly claims that obtaining a UL listing for its testers would not solve the problem as consumers will still purchase the cheaper Woodhead tester.

The district court granted summary judgment[1] for UL, holding in a one-paragraph opinion that: "The crux of plaintiff's argument is that it produced a superior product and that only its product should qualify for UL listing. Plaintiff's alleged injury results from the claim that it was forced to compete with inferior products. The actions plaintiff complains of, however, are not antitrust violations."

## III  Application of Antitrust Laws to Standard Making

Plaintiff is not the first company to complain that the activities of standard-making organizations such as UL violate the antitrust laws. However, ECOS is the first to make the claim that approval of a competitor's products by such an organization, without more, constitutes an illegal restraint of trade. The best that can be said of this argument is that it is novel. An examination of the purpose of the antitrust laws will demonstrate that plaintiff's claim would seem to be a poorly disguised attempt to use these laws to stifle competition.

Section 1 of the Sherman Act makes illegal: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade." Of course, the Act has not been read literally to condemn "every" contract that incidentally restrains trade, rather the standard of reasonableness has been adopted to judge the lawfulness of the restraint. *United States v. Topco Associates*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972); *Standard Oil Co. v. United States*, 221 U.S. 1, 66, 31 S.Ct. 502, 518, 55 L.Ed. 619 (1911). It is clear that "Congress did not intend to prohibit all contracts, nor even all contracts that might in some insignificant degree or attenuated sense restrain trade or competition." 405 U.S. at 606, 92 S.Ct. at 1133. The antitrust laws are not "panacea[s] for all business affronts which seem to fit nowhere else." *Scranton Construction Co. v. Litton Industries Leasing Corp.*, 494 F.2d 778, 783 (5th Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975); *Sitkin Smelting & Refining Co. v. FMC*, 575 F.2d 440 (3d Cir.1978), *cert. denied*, 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176.

■■■ To state a claim, then, ECOS must allege anticompetitive conduct and injury resulting from that conduct. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). It is not enough, however, to assert sweeping conclusions of law, as ECOS has done here. *Frederiksen v. Poloway*, 637 F.2d 1147 (7th Cir.1981), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389. Claiming that conduct is anticompetitive and illegal does not make it so. To state a claim against a standard-making organization such as UL "plaintiff must show either that it was barred from obtaining approval of its products on a discriminatory basis from its competitors, or that the conduct as a whole was manifestly anticompetitive and unreasonable." *Elia-*

---

1. Although Judge Grady denominated his ruling as a grant of summary judgment, he found this portion of ECOS's complaint insufficient on its face. The distinction between summary judgment and dismissal for failure to state a claim is not determinative of the outcome in this case, however, and with the exception of ECOS's failure to request a UL listing, we will rely on the complaint.

son Corp. v. National Sanitation Foundation, 614 F.2d 126, 129 (6th Cir.1980), cert. denied, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 29. A brief examination of the cases ECOS relies upon in its attempt to show the anticompetitive nature of UL's conduct will reveal how wide of the mark ECOS is.

In both *Radiant Burners v. Peoples Gas Light and Coke Company*, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961), and *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corporation*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), plaintiffs complained that they had been denied approval by a standard-making organization and that the purpose and effect of this denial was to exclude them from the market as consumers would not, or could not, purchase products that had not been approved. In both cases the Court recognized that the power of a standard-making organization can be abused when it is used to exclude competitors from a market *by denying them the needed stamp of approval.* ECOS, however, did not request a UL listing and now disclaims any interest in obtaining UL's stamp of approval. In essence the caliginous claim of ECOS emerges as a desire that its competitors not be listed by UL.

ECOS also relies upon *Fashion Originators' Guild of America v. FTC*, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941), *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945), and *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351 (5th Cir.1980), none of which supports ECOS's claim. In *Fashion Originators' Guild of America* the Guild organized a boycott of retailers who dealt with the Guild's "style pirate" competitors. This conduct was clearly anticompetitive—in fact that was the expressed intention of the Guild—and the only question was whether it was justified by the "immoral" and "tortious" nature of "pirates'" conduct. The Court held that the allegedly tortious nature of the competition did not justify the Guild's boycott. Similarly, in *Associated Press* the By-Laws of AP, which prohibited members from dealing with non-members and prohibited the admission to membership of a competitor of a member, were found to be anticompetitive. Similar conduct was condemned in *Realty Multi-List.* ECOS has not alleged any boycott of its products other than by consumers dissuaded from purchasing ECOS testers by their high price.

ECOS's claim, although couched in terms of deprivation of an "unfettered opportunity" to sell its product, is clearly directed toward lessening competition. ECOS is not claiming that UL has excluded ECOS from the circuit tester market by denying ECOS a UL listing, but instead claiming that UL increases consumer preference for low cost testers by certifying them as safe. ECOS seeks to avoid the fetters of price competition by claiming that consumers are injured when they choose inferior testers because of the price. A similar argument was raised in *National Society of Professional Engineers v. United States*, 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), in defense of the Society's refusal to allow members to compete for clients on the basis of price. The Court rejected the claim, finding it "nothing less than a frontal assault on the basic policy of the Sherman Act." 435 U.S. at 695, 98 S.Ct. at 1367. ECOS's attempt to use the antitrust laws as a means of stifling price competition is equally antithetical to the goals of the Sherman Act. ECOS may make its claims concerning the desirability of its testers known to consumers through advertising, but if that fails ECOS may not indirectly force Woodhead to raise its prices by forcing UL to raise its standards. The antitrust laws cannot be used "to require businesses to price their products at unreasonably high prices (which penalize the consumer) so that less efficient competitors can stay in business." *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1358–59 (9th Cir. 1976), cert. denied, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).

The dealings between ECOS and UL make it clear that ECOS wished not only to deny its competitors UL listings, but also to obtain a standard that only ECOS could meet. Use of the antitrust laws for this purpose cannot be countenanced. Moreover, even to accept a less drastic reading of ECOS's position and assume that ECOS merely wished that no tester be given a UL listing would be to eliminate all standard-making organizations. This was not the intended effect of the antitrust laws.

> An association formed to foster high standards, to mitigate evils in trade existing through lack of knowledge or information, and to encourage fair competitive opportunities is not to be condemned as an undue restraint of interstate commerce in violation of the Sherman Act merely because it may effect a change in the market conditions.

*Roofire Alarm Co. v. Royal Indemnity Co.*, 202 F.Supp. 166, 169 (E.D.Tenn.1962), *aff'd*, 313 F.2d 635 (6th Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963).

We can accept ECOS's claim that a UL listing makes a Woodhead tester more attractive to consumers without accepting the claim that the listing unreasonably restrains competition. The purpose of UL is to affect competition by providing consumers with information concerning the safety of various products. Eliminating market imperfection by providing information to consumers, however, is not an illegal restraint of competition. That ECOS does not agree with UL's assessment of Woodhead testers is irrelevant. ECOS, as we have noted, may make its beliefs known through advertising, but ECOS may not forbid UL from making its belief in the safety of Woodhead testers equally known to consumers.

ECOS's complaint does not state a claim under the antitrust laws. Accordingly, we need not consider the other arguments raised by the parties. The judgment of the district court is AFFIRMED.