EDWARD J. MARTIN & others[1] *vs.* FACTORY MUTUAL
RESEARCH CORPORATION.

Norfolk.   October 8, 1987. — February 4, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Consumer Protection Act,* Unfair act or practice. *Contract,* What constitutes.

In an action by holders of patents on a design for a fire extinguisher against an
independent consumer product testing organization for its failure to test
and approve the plaintiffs' extinguisher, there was insufficient evidence
presented through summary judgment materials to support the plaintiffs'
claims under G. L. c. 93A, the Consumer Protection Act, that the
defendant acted unfairly in subjecting the extinguisher to tests not in-
cluded in its standard testing criteria for fire extinguishers, and that the
defendant engaged in deceptive acts or practices by not intending to test
the extinguisher for approval and engaging in conduct intended to frus-
trate the plaintiffs' effort to obtain approval. [623-624]

An independent consumer product testing organization was not liable to the
holders of patents on a design for a fire extinguisher on the ground that
the defendant had failed to fulfil a contractual obligation to test the
extinguisher, where the evidence presented on a motion for summary
judgment did not establish that the defendant was unconditionally obli-
gated to conduct approval testing of the extinguisher. [624-625]

In an action by holders of patents on a design for a fire extinguisher against an
independent consumer product testing organization for its failure to give
its approval to the plaintiffs' extinguisher, the record did not support
claims by the plaintiffs that the defendant was liable for unfair trade
practices, restraint of trade, unfair discrimination, manifestly anticom-
petitive and unreasonable conduct, or malicious interference with the
plaintiffs' advantageous business relationships. [625-626]

CIVIL ACTION commenced in the Superior Court Department
on January 5, 1983.

The case was heard by *Roger J. Donahue,* J., on a motion
for summary judgment.

[1] Joseph M. Minkevitch and Michael M. Campisano.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard D. Bickelman* for the plaintiffs.

*Wm. Gerald McElroy, Jr.,* for the defendant.

WILKINS, J. The plaintiffs hold several patents on a design for a portable, hand-pumped, dry chemical fire extinguisher. The fire extinguisher is made of plastic and is operated by a built-in bellows rather than being pressurized. To be marketed successfully such a product must have the approval of a recognized independent testing organization such as the defendant (Factory Mutual). The plaintiffs contend, on several theories, that Factory Mutual is liable to them because it failed to test and approve their fire extinguisher and consequently they could not sell it successfully.

The plaintiffs' principal claims are that in its dealings with them Factory Mutual engaged in unfair and deceptive acts or practices in violation of G. L. c. 93A, § 11 (1986 ed.), and that Factory Mutual failed to fulfil a contractual obligation to test the fire extinguisher. A judge in the Superior Court entered summary judgment for Factory Mutual. We transferred the plaintiffs' appeal here and now affirm the judgment for Factory Mutual.

In the summary judgment process, the parties have presented all the evidence on which they rely to support their respective positions.[2] There are no disputed material facts, although there is a sharp disagreement as to the relative importance of particular facts. The question, therefore, is not the traditional question whether Factory Mutual has shown that there are no issues of disputed material fact but rather whether on the evidence presented through the summary judgment materials (and reasonable inferences from that evidence) a finding for the plaintiffs would be warranted. If there is no evidence in the record to

---

[2] The case is before us on a record which includes numerous letters between the parties, extracts from depositions, answers to interrogatories, and affidavits. There is no suggestion that there is other evidence bearing on the issues or that full discovery has not been completed.

The judge did not abuse his discretion in accepting postargument material from Factory Mutual.

support judgment for the plaintiffs, summary judgment for Factory Mutual was appropriate. See Mass. R. Civ. P. 56(e), 365 Mass. 824 (1974).

1. Unfairness within the meaning of "unfair . . . acts or practices," in G. L. c. 93A, § 2 (1986 ed.), is determined from all the circumstances. See *Swanson* v. *Bankers Life Co.,* 389 Mass. 345, 349 (1983). No automatically stricter standard of conduct applies to Factory Mutual under G. L. c. 93A because, as one of two testing laboratories recognized as competent to test fire extinguishers, it may have considerable influence over market access for the plaintiffs' product. Nor, on the other hand, is Factory Mutual automatically subject to a less strict standard of conduct because in its testing function it performs an important public safety role in protecting against the sale of inadequate or defective products.

The plaintiffs argue that Factory Mutual acted unfairly in subjecting their fire extinguisher to tests not included in Factory Mutual's standard testing criteria for fire extinguishers. The plaintiffs' fire extinguisher, however, was of unique design and could not be tested under any existing Factory Mutual approval criteria because there were none for an extinguisher of its type. Factory Mutual was willing to deal with the plaintiffs, but it had to develop a new set of standards. It was necessary and hardly unfair to develop new standards.

It also was no violation of G. L. c. 93A, § 11, for Factory Mutual to require the plaintiffs to prove that the extinguisher would put out fires before Factory Mutual would conduct full scale approval testing. The ability of the extinguisher to put out a fire had to be established at some point in order to obtain approval. In fact the extinguisher did pass these preliminary tests, although it was able to work effectively when pointed upward only if the user manipulated the extinguisher in a special way. Although Factory Mutual's representatives expressed skepticism about the extinguisher at various times, one would expect that a testing laboratory might take such an approach, and it was not unfair to do so.

The evidence, whose recital in detail would serve no significant purpose, simply fails to support the claim that Factory

Mutual unfairly frustrated the plaintiffs' efforts to gain approval of their fire extinguisher. No harm came to the plaintiffs when Factory Mutual conducted certain tests with no representative of the plaintiffs present, nor was it unfair for Factory Mutual to conduct those tests, even if Factory Mutual had agreed to permit the plaintiffs to be present. As will be seen more fully when we discuss the plaintiffs' contract claim, the plaintiffs ultimately abandoned serious efforts to obtain Factory Mutual's approval. In short, we see no unfair act or practice in Factory Mutual's dealings with the plaintiffs.

The plaintiffs briefly argue that Factory Mutual engaged in deceptive acts or practices. There is no evidence to support such a claim. The inferences of deception that the plaintiffs assert could be drawn from the evidence would not be reasonable ones. The claim under G. L. c. 93A that Factory Mutual did not intend to test the fire extinguisher for approval and deliberately engaged in conduct intended to frustrate the plaintiffs' efforts to obtain approval simply lacks evidentiary support. There is no basis for the claim that Factory Mutual unlawfully refused to deal with the plaintiffs.

2. Factory Mutual is not liable to the plaintiffs for breach of contract.

There is evidence that, early in the relationship between the parties, a representative of Factory Mutual said that, if the fire extinguisher passed preliminary fire tests, Factory Mutual would then test it for approval. We accept that the evidence would have presented a factual question whether at that time Factory Mutual agreed to test the extinguisher for approval if it should pass preliminary tests. There was no agreement, however, as to the price to be paid for the testing or as to any details of the circumstances of the final testing.

On November 4, 1980, after the extinguisher had passed preliminary tests, Factory Mutual sent the plaintiffs a "Proposal and Service Agreement." That agreement stated the estimated cost of the testing and added that the proposal was subject to acceptance within ninety days. By a covering letter, Factory Mutual described what tests it would perform. Factory Mutual was prepared to test the plaintiffs' product for approval, but

the plaintiffs did not sign and return the proposal within ninety days.

On December 26, 1980, the plaintiffs wrote to Factory Mutual that they would like to have their fire extinguisher tested and approved if it was not to be restricted to the home or consumer market. Factory Mutual replied on January 29, 1981, that the extinguisher appeared unable to expel sufficient amounts of powder when the discharge nozzle was aimed above the horizontal plane and that this had to be corrected before Factory Mutual would proceed further. In July, 1981, the plaintiffs demonstrated that the extinguisher could work above the horizontal plane, not by pumping it with the bellows, but rather by squeezing the base with the bellows closed. In August, Factory Mutual suggested that this manner of upward operation would have to be explained on the extinguisher in writing and illustrated in picture form. Factory Mutual also indicated that it had cancelled the project because the plaintiffs had not responded to the November proposal and service agreement within ninety days and that a new proposal and agreement would have to be signed. The plaintiffs did not pursue the matter further with Factory Mutual and ultimately brought this action.

We see no breach of contract by Factory Mutual. The relationship between the parties was a continuing one. The plaintiffs failed to accept the conditions under which Factory Mutual was willing to test the extinguisher for approval or to explain why those conditions were unreasonable. At no time was Factory Mutual unconditionally obligated to conduct approval testing of the extinguisher.

3. The plaintiffs' other theories of liability are not supported by the record. A claim of unfair trade practices or restraint of trade is argued only on the basis of one case under the Sherman Anti-Trust Act. State courts have no jurisdiction over such a claim. See 15 U.S.C. § 4 (1982); *Blumenstock Bros. Advertising Agency* v. *Curtis Publishing Co.,* 252 U.S. 436, 440 (1920). In any event, the facts do not warrant a finding of unfair discrimination or manifestly anticompetitive and unreasonable conduct. See *ECOS Elecs. Corp.* v. *Underwriters*

*Laboratories, Inc.,* 743 F.2d 498, 501-502 (7th Cir. 1984), cert. denied, 469 U.S. 1210 (1985). Similarly, the facts would not warrant a finding that Factory Mutual intentionally and maliciously interfered with whatever advantageous relationship, if any, the plaintiffs may have had.

*Judgment affirmed.*