Hely, J.
INTRODUCTION
Wellfleet has moved for summary judgment on the single count in its complaint for declaratory judgment and on Dilan’s counterclaims. Dilan originally moved for summary judgment on liability on its second counterclaim. In reply to Wellfleet’s motion, Dilan has also asked for summary judgment in its favor both on Wellfleet’s declaratory judgment claim and on all of Dilan’s counterclaims.
The court has applied the summary judgment standards laid out in Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991). Considering only those facts which are undisputed, Dilan prevails summarily on Wellfleet’s declaratory judgment claim. Wellfleet in turn is entitled to summary judgment on Dilan’s Chapter 93A counterclaims because the offending actions and transactions did not occur primarily in the Commonwealth. G.L.c. 93A, Sec. 11, par. 8. The sole surviving issue is Dilan’s counterclaim for breach of contract, even though it was partially anticipatory at the time of filing.
I. WELLFLEET’S COMPLAINT FOR DECLARATORY JUDGMENT
The initial Ordering Period of the agreement was the period of time beginning on the Agreement Effective Date, December 12, 1991, and ending twelve months from that date. Agreement TC Sec. 1.12. The initial Ordering Period thus expired at the close of business on December 11, 1992. Subsequent ordering periods were to be “the twelve (12) month periods beginning immediately after the preceding Ordering Period.” Agreement TC Sec. 1.12. Wellfleet’s letter of September 8, 1993, and Mr. Adamczyk’s affidavit (par. 18) correctly recognized that December 11, 1993, was the last day of the then current ordering period. The then current ordering period expired at the close of business on December 11, 1993.
Either party could terminate the agreement without cause by providing the other party with written notification of its intent not to renew “at least ninety (90) days prior to the expiration of the then current Ordering Period.” Agreement TC Sec. 2. Notices under the agreement are deemed given when “delivered by hand (against receipt)” or “five (5) days after posting when sent by registered mail or certified mail” to an authorized receiving party. Agreement BA-1 Sec. 2.
Wellfleet mailed the notice of intent to not renew by certified mail on September 8, 1993. The certified mail notice is therefore deemed given on September 13, 1993, “five (5) days after posting.” Id. For the non-renewal notice to have been effective at the end of the then current Ordering Period, there must have been ninety full days between the date notice was given, September 13, 1993, and the expiration of the Ordering Period at the close of business on December 11, 1993. This is the meaning of the “prior to” phrase in the nonrenewal clause, Agreement TC Sec. 2. The court has taken judicial notice of the 1993 calendar in the 1995 Massachusetts Lawyers Diary and Manual (inside front cover). Counting September 14, 1993, as the first full day after notice was given, it follows that December 12,1993 is the ninetieth full day after notice was given .
Even if we count September 13, 1993, as the first of the ninety days, the ninetieth day is then December 11, 1993. The certified mail notice was therefore not given to Dilan at least ninety full days prior to the expiration of the then current ordering period at the close of business on December 11, 1993. There can be no genuine issue of material fact on this point. Dilan is entitled to summary judgment on Wellfleet’s complaint for declaratory judgment.
Wellfleet argues that Dilan received actual notice of Wellfleet’s intent not to renew based on the conversations between Mr. Adamczyk and Mr. Martin on September 7 and 8, 1993. The agreement between the parties provides that it shall renew automatically for subsequent ordering periods unless written notice of intent to not renew is provided at least nineiy days prior to the expiration of the then current ordering period. Agreement TC Sec. 2. Actual notice, in the sense of being told by telephone of Wellfleet’s intent, does not satisfy the nonrenewal notice requirement agreed to by the parties. There is no evidence that Dilan waived this provision.
Wellfleet’s summary judgment memorandum does not argue that telecopy delivery of the September 8 notice on September 8 satisfied the “by hand (against receipt)” alternative of the notice provision, Agreement BA-1 Sec. 2.
II. DILAN’S COUNTERCLAIMS UNDER CHAPTER 93A
A. Violation of the Sherman Antitrust Act as a Basis for a Chapter 93A Claim
Regarding Dilan’s counterclaims, the court previously has dismissed Dilan’s first counterclaim, alleging a violation of the Sherman Antitrust Act, 15 U.S.C. Sec. 1, as an independent cause of action. See Blumertstock Bros. Advertising Agency v. Curtis Publishing Co., 252 U.S. 436, 440 (1920); Martin v. Factory Mutual Research Corp., 401 Mass. 621, 625 (1988). *616 Dilan’s remaining counterclaims allege various violations of G.L.c. 93A, Sec. 2 (second, third and fifth claims) and breach of contract including an anticipated breach (fourth claim).
Wellfleet first seems to argue that if its conduct amounted to a violation of the Sherman Antitrust Act the court lacks subject matter jurisdiction over the conduct. This is incorrect. If Wellfleet’s acts amounted to either “unfair methods of competition” or “unfair or deceptive acts or practices” declared unlawful by G.L.c. 93A, Sec. 2, the availability of a Sherman Act claim in Federal court does not shield Wellfleet from enforcement of a Massachusetts statute based on the same conduct.
Wellfleet has overlooked eighty-six years of Massachusetts legal history. Our courts have been enforcing state statutes against practices in restraint of trade since at least the Massachusetts antitrust act of 1908, St. 1908, c. 454, the predecessor to G.L.c. 93, Sec. 1-14. Wellfleet has cited no authority holding that Federal legislation has preempted the field of antitrust regulation. Dilan’s arguments on this point are sound. They should have been unnecessary in the light of G.L.c. 93A, Sec. 2(b), and familiar case law applying Federal fair trade standards in our state courts.
B. The Exemption for Conduct That Was Not Primarily in Massachusetts
Wellfleet’s more meaty argument is that the “actions and transactions” constituting the alleged Chapter 93A violation did-not occur “primarily and substantially” within the Commonwealth. G.L.c. 93A, Sec. 11, par. 8, creates an “exemption” if such conduct is missing. Bushkin Associates. Inc. v. Raytheon Co., 393 Mass. 622, 637 (1985) (applying a nearly identical clause in an earlier version of Sec. 3). The burden of showing that the offending conduct did not occur primarily in the Commonwealth is on the party opposing the 93A claim. G.L.c. 93A, Sec. 11, par. 8.
The leading cases have identified at least three sets of important factors in determining whether the exemption applies: (1) the place where the defending party committed the unfair or deceptive acts; (2) the place where the claimant received and acted upon the unfair or deceptive statements; and (3) the place where the claimant sustained losses due to the unfair or deceptive acts. Bush-kin, 393 Mass, at 637-39; Clinton Hospital Association v. The Corson Group, Inc., 907 F.2d 1260, 1265-67 (1st Cir. 1990); see Makino, U.S.A.. Inc. v. Metlife Capital Credit Corp., 25 Mass.App.Ct. 302, 309-11 (1988); Data General Corp. v. Grumman Systems Support Corp., 343 F.Supp. 477, 486-87 (1992).
The Appeals Court in Makino considered it significant that “the preponderance of the wrongful conduct occurred” in Massachusetts and that “the essential elements of the transaction” took place here. 25 Mass.App.Ct. at 311. The court described the analysis as a “process of measuring and weighing, which flows from the words ‘primarily and substantially.’ ” Id. We must also remember to keep our focus on those “actions and transactions” of Wellfleet toward Dilan that are alleged to be unlawful in the counterclaims and summary judgment materials. G.L.c. 93A, Sec. 11, par. 8.
On the first set of factors, we find Dilan’s heftiest material. Mr. Adamczyk was in the Bay State when he made the telephone statements and sent the letters attempting to terminate or not renew the contract. The contract was drafted here, and this too is important. In Wellfleet’s favor, however, is the conduct of Wellfleet’s regional sales manager. Mr. Boone notified Dilan that its Duke Power bid violated the contract. Boone was at least a player in the decision not to renew Dilan, though it is disputed whether he performed solo. The tar on Boone’s heels is not disputed.
The other critical factors all weigh heavily in Wellfleet’s favor. In essence, Dilan alleges that Wellfleet enforced a price-fixing clause by pressuring Dilan to retract its Duke Power bid and by cutting off Dilan as a reseller. Dilan was in North Carolina when it entered and performed on the Wellfleet contract which included the offending provisions. Wellfleet’s products were to be delivered to Dilan at its Hickory home or at a place designated by Dilan. Dilan was in North Carolina when it was subjected to and acted upon all of Wellfleet’s allegedly unfair and unlawful conduct. These are all big factors in the analysis endorsed in Makino and Clinton Hospital (“ingestion” and reliance).
Although the Dilan-Wellfleet relationship is the focus of the issue, it is worth noting that the DilanDuke Power relationship was in North Carolina. More importantly, Dilan suffered all its alleged losses in North Carolina, another weighty factor under Makino and Clinton Hospital (effects of the “venomous sting”).
Adamczyk’s conduct and the source of the contract are significant, but they cannot offset the mass of the other major factors. Considering the undisputed facts in the light of the applicable precedents, Wellfleet’s “actions and transactions” that harmed Dilan did not occur primarily in Massachusetts. Dilan’s evidence shows no reasonable basis for finding otherwise. Even with inferences in Dilan’s favor and the burden of proof on Wellfleet, a fair-minded jury could not return a verdict for Dilan on this issue. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Whatever may be the merits of Dilan’s price-fixing claim, a Chapter 93A claim is precluded by the exemption in Section 11, paragraph 8.
Dilan’s final plea on the 93A exemption takes us on a short round-trip excursion. The contract’s choice-of-law clause says Massachusetts law governs. The Section 11 exemption is part of Massachusetts law. If a party loses a possible claim by agreeing to a choice-of-law clause, the court cannot rewrite its laws to restore the claim.
*617 III. DILAN’S COUNTERCLAIM FOR BREACH OF CONTRACT
When Dilan filed its counterclaims on December 3, 1993, its breach of contract counterclaim may have been anticipatory. In the meantime, the next one-year ordering period has come and gone. Counsel informed the court at the summary judgment hearing that the parties did no business together in the ordering period ending on December 11, 1994.
Dilan’s fourth counterclaim is sufficient to allege a claim for breach of contract: “As a direct and proximate result of Wellfleet’s breach and anticipatory breach . .., Wellfleet has caused DILAN to suffer great injury and damage ...” A party can recover for continuing breach of contract damages that occur between the filing of the complaint and the trial. The summary judgment materials do not demonstrate as a matter of law that Dilan’s proof of damages at trial will be too speculative or anticipatory.
IV. DILAN’S MOTION TO AMEND
Sensing vulnerability on the 93A exemption, Dilan moved to amend its counterclaims to add a counterclaim under the North Carolina Consumer Protection Act. The motion to amend is denied because it is untimely and futile. The parties agreed that their contract “shall be interpreted and governed by the law of the Commonwealth of Massachusetts,”
ORDER
1. A declaratory judgment will enter on Wellfleet’s complaint as follows: The letter dated September 8, 1993, from Stanley Adamczyk of Wellfleet Communications, Inc. to Robert B. Martin of Dilan, Inc. (Ex. E of Wellfleet’s Complaint) did not terminate the contract between the parties on December 11, 1993, and did not accomplish a nonrenewal of the contract at the end of the then current Ordering Period.
2. A judgment will enter dismissing Dilan’s second, third and fifth counterclaims.
3. Dilan’s Motion to Amend Counterclaim is DENIED.