# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1557

_____

Blue Dane Simmental Corporation;　　＊
Roland Nuss; Ron Vlasin;　　＊
Dennis Behrhorst,　　＊
　　＊
　　　　Plaintiffs/Appellants,　　＊
　　＊
　　v.　　＊
　　＊
American Simmental Association;　　＊
Tom Risinger,　　＊
　　＊
　　　　Defendants/Appellees,　　＊　　Appeals from the United States
　　＊　　District Court for the
John Doe,　　＊　　District of Nebraska.
　　＊
　　　　Defendant,　　＊
　　＊
Risinger Ranches, Inc.,　　＊
　　＊
　　　　Defendant/Appellee.　　＊

_____

No. 98-1615

_____

Blue Dane Simmental Corporation;　　＊
Roland Nuss; Ron Vlasin;　　＊
Dennis Behrhorst,　　＊
　　＊
　　　　Plaintiffs/Appellees,　　＊

                                            *
         v.                                 *
                                            *
American Simmental Association;             *
                                            *
         Defendant/Appellant,               *
                                            *
Tom Risinger; John Doe;                     *
Risinger Ranches, Inc.,                     *
                                            *
         Defendants.                        *


                    _____

                    No. 98-1617

                    _____


Blue Dane Simmental Corporation;            *
Roland Nuss; Ron Vlasin;                    *
Dennis Behrhorst,                           *
                                            *
         Plaintiffs/Appellees,              *
                                            *
         v.                                 *
                                            *
American Simmental Association;             *
                                            *
         Defendant,                         *
                                            *
Tom Risinger,                               *
                                            *
         Defendant/Appellant,               *
                                            *
John Doe,                                   *
                                            *
         Defendant,                         *
                                            *

Risinger Ranches, Inc.,        *

                               *

        Defendant/Appellant.     *

—————————

No. 98-1727

—————————

Blue Dane Simmental Corporation;   *
Roland Nuss; Ron Vlasin;   *
Dennis Behrhorst,   *
   *
        Plaintiffs/Appellees,   *
   *
        v.   *
   *
American Simmental Association;   *
   *
        Defendant/Appellant,   *
   *
Tom Risinger; John Doe;   *
Risinger Ranches, Inc.,   *
   *
        Defendants.   *

—————————

No. 98-1815

—————————

Blue Dane Simmental Corporation;   *
Roland Nuss; Ron Vlasin;   *
Dennis Behrhorst,   *
   *
        Plaintiffs/Appellees,   *
   *

v.                                          *
                                            *
American Simmental Association;             *
                                            *
             Defendant,                     *
                                            *
Tom Risinger,                               *
                                            *
             Defendant/Appellant,           *
                                            *
John Doe,                                   *
                                            *
             Defendant,                     *
                                            *
Risinger Ranches, Inc.,                     *
                                            *
             Defendant/Appellant.           *
                                _____

                      Submitted: February 10, 1999

                          Filed: June 2, 1999
                                _____

Before WOLLMAN,[1] LOKEN, and MORRIS S. ARNOLD, Circuit Judges.
                                _____

WOLLMAN, Chief Judge.

      Blue Dane Simmental Corporation, Roland Nuss, Ron Vlasin, and Dennis
Berhorst (plaintiffs) appeal the grant of judgment as a matter of law entered by the

_____

      [1]Roger L. Wollman became Chief Judge of the United States Court of Appeals
for the Eighth Circuit on April 24, 1999.

district court[2] in favor of the American Simmental Association (ASA), Tom Risinger, and Risinger Ranches (defendants). We affirm.

## I.

The ASA was organized in 1968 as a non-profit corporation for "the development, recording, registration, and promotion of the Simmental breed of cattle in the United States of America." To catalog Simmental cattle within the United States, the ASA maintains what is known as an open herdbook. In this system, breeders may register animals that are less than 100% Simmental. In contrast, a closed herdbook system limits registration to animals that are 100% of a particular breed. Prior to 1988, the ASA registered cattle as either "percentage" or "purebred." Percentage cattle had either one-half, three-quarters, or seven-eighths Simmental blood. Purebred Simmentals were females of at least seven-eighths blood, or males of at least fifteen-sixteenths blood. Purebred animals were considered 100% Simmental for calculating the percentage of Simmental blood in their offspring, regardless of their actual percentage of Simmental blood.

Initially, the ASA did not recognize a difference between purebred domestic animals and purebred Simmental from the original herds of Austria, France, Germany, or Switzerland. Some breeders, however, sought official acknowledgment that some animals were "original," or from European herds. In response to growing demand from its membership, the ASA passed a "foreign ancestry rule" in 1988.[3] This rule made no

---

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[3]The 1988 Foreign Ancestry rule states:

Certificates of Foreign Registration may be issued that identify an animal whose parentage traces only to foreign ancestry.

mention of genetic purity, directing focus only on the country of origin to determine whether an animal qualified for foreign ancestry designation.  As a result of the rule, between 75,000 and 80,000 purebred animals were given a foreign ancestry designation.

In 1992, the rule was amended by changing "foreign ancestry" to "fullblood." Thus, any animal whose pedigree was completely traced to the herdbooks of Austria, France, Germany, or Switzerland within five generations was known as fullblood.

Although the rule identified fullbloods as cattle traced to European herdbooks, the members of the ASA continued to disagree as to how fullblood should be defined. Some members believed that fullblood referred to animals with varying percentages of Simmental ancestry, while others thought that it meant "no known ancestry of another breed."  In 1994, the ASA amended the rule a third time, defining fullblood animals as Simmentals with no known ancestry from another breed.  In addition, the 1994 rule contained a grandfather clause that permitted all animals previously classified as fullblood to retain that classification.

---

1.  When a mating occurs between two animals whose parentage originates solely from a qualified foreign registry, the resulting offspring shall be eligible for the designation of foreign ancestry.

2. Only animals whose ancestors originate from the herdbooks of France, Germany, Austria, or Switzerland are eligible for this designation.

3.  Upon payment of the appropriate fee, a breeder may request a pedigree search for animals which enter the ASA Herdbook from any herdbook other than those noted above to determine if the animal in question qualified for the designation of foreign ancestry.

Appellant's App. at 554.

The current controversy involves a dispute over the classification of animals registered by Risinger. In 1991, Risinger filed an application to register nineteen animals the genetic material of which he had purchased the exclusive right to sell within the United States and Mexico. Based upon the documentation that was received by the ASA, seven of the animals were designated as foreign ancestry under the 1988 rule in November 1991. The remaining twelve animals were registered as fullblood under the 1992 rule in April 1992.

Plaintiffs subsequently discovered that some of the Risinger animals contained Angus ancestry. In particular, two bulls, Manor Washington and Manor Westerner, had in their pedigree a German bull named Pirol. Pirol was 97% Simmental, the remaining 3% was confirmed to be Angus. Plaintiffs filed a protest with the ASA, seeking to revoke the animals' classification as fullblood. In addition, they opposed the adoption of the 1994 rule change, objecting to the grandfather clause which would allow the Risinger animals to retain their fullblood registration. At the American Simmental conference on February 24, 1994, Gianluca Brenni, president of Blue Dane, explained the problems with the 1994 rule and the Risinger cattle and moved to table the 1994 rule. His motion lost, and the 1994 rule was adopted by a vote of 1,228 to 118.

On April 14, 1994, plaintiffs initiated the present action, alleging violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 96 U.S.C. § 1962, the Sherman Act, 15 U.S.C. §§ 1 and 4(a), and the Lanham Act, 15 U.S.C. § 1125, and raising state law negligence claims. After a nine-day jury trial, the district court entered judgment as a matter of law in favor of defendants under Fed. R. Civ. P. 50. The district court then denied defendants' motion for attorney fees under the Lanham Act, 15 U.S.C. § 1117.

Plaintiffs appeal, arguing that the district court erred in excluding testimony from its economic expert regarding causation, by not submitting its RICO, Sherman Act,

Lanham Act, and negligence claims to the jury, and by excluding specific exhibits at trial.[4] Defendants cross-appeal the denial of attorney fees.

## II.

### A.

Plaintiffs argue that the district court erred by excluding the testimony of Dr. Alan Baquet, an agricultural economist, under Daubert v. Merrell-Dow Pharmaceuticals, 509 U.S. 579 (1993). We review the district court's ruling for an abuse of discretion. See Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1171 (1999); National Bank of Commerce, of El Dorado, Ark. v. Dow Chem. Co., 133 F.3d 1132, 1132 (8th Cir. 1998) (per curiam). Moreover, "[t]hat standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." Kumho, 119 S. Ct. at 1176.

When evaluating the admissibility of expert testimony under Federal Rule of Evidence 702, the district court must look to both the relevancy and the reliability of the testimony. See Kumho, 119 S. Ct. at 1174; Daubert, 509 U.S. at 589; Jaurequi v. Carter Mfg. Co., No. 97-3142, slip op. at 8 (8th Cir. Apr. 6, 1999). This gate-keeping function is applicable to "'technical' and other 'specialized'" expert testimony, in addition to the testimony of scientific experts. Kumho, 119 S. Ct. at 1171 (quoting Fed. R. Evid. 702).

Dr. Baquet was to testify that the introduction of the nineteen Risinger animals into the fullblood Simmental market in the United States caused the market value of all American Simmentals to drop substantially. To support this testimony, he noted that

---

[4]We have considered and hold to be without merit plaintiffs' contention that the district court erred in ruling on certain discovery matters.

prior to the introduction of the Risinger animals, both the Canadian and American Simmental markets were dropping. Following the introduction of these animals, the United States market dropped another 53%, while the Canadian market dropped only 26%. Dr. Baquet attributed this 27% difference in market price to the introduction of the Risinger Simmentals.

In determining that the testimony was not reliable, the district court did not dispute that Dr. Baquet was an adequately qualified expert witness. Instead, it found that the methodology he employed was unreliable, stating that the analysis was "simplistic." The court noted that Dr. Baquet attributed the entire difference in market price within the United States and Canada to the Risinger fullbloods, despite the fact that these animals made up a tiny fraction of the market, nineteen out of 138,169 total head.

The district court noted that at least one other independent variable contributed to the falling cattle markets, as it was undisputed that both the Canadian and American markets were falling prior to the introduction of the Risinger animals. Furthermore, during his deposition Dr. Baquet admitted that various factors contribute to particular cattle breeds losing market value. He stated that generally an economist would attempt to identify and evaluate all of the independent variables significantly affecting changes in the value of a breed. Dr. Baquet acknowledged that he had neglected to consider any variables other than the introduction of the Risinger fullbloods.

Plaintiffs argue that the proper remedy for defendants would be to challenge this methodology through cross-examination and introduction of rebuttal expert testimony. They contend that Dr. Baquet's research method, called a before-and-after model, is a common tool used by economic researchers.

In Kumho, the Supreme Court found that the exclusion of a qualified tire expert's use of visual and tactile examination of automobile tires was within the trial courts

discretion, despite the fact that this methodology was generally accepted within the relevant field. See 119 S. Ct. at 1176-77. In so holding, the court found that it was not the general acceptance of the methodology that was relevant, "[r]ather, it was the reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." Id. at 1177. Because the Court found that the research method did not satisfy the four Daubert factors, and was not a reliable indicator of the results to which the expert would testify, it upheld the exclusion of the testimony. See Kumho at 1178-79.

This case is analogous to Kumho. Although Dr. Baquet utilized a method of analysis typical within his field, that method is not typically used to make statements regarding causation without considering all independent variables that could affect the conclusion. We find no evidence in the record that other economists use before-and-after modeling to support conclusions of causes of market fluctuation. See, e.g., Kumho 119 S. Ct. at 1178. See also Jaurequi, slip op. at 8 & n.3 (quoting General Elec. Co. v. Joiner, 118 S. Ct. 512, 519 (1997)) (finding that the scientific validity of a methodology is the key to admissibility, and noting that "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). Nor do plaintiffs cite to any articles or papers that would support Dr. Baquet's approach. See Kumho, 119 S. Ct. at 1178. Accordingly, we conclude that the district court did not abuse its discretion by excluding Dr. Baquet's testimony.

**B.**

Plaintiffs allege that the ASA and Risinger violated RICO, the Sherman Act, and the Lanham Act by conspiring to improperly register the Risinger animals as fullblood, by attempting to create a monopoly in fullblood Simmental animals, and by advertising the Risinger animals as fullblood.

An animal's classification as foreign ancestry under the 1988 rule was dependent on ancestry in foreign herdbooks, not genetic purity. Thus, if an animal's parents could be traced to herdbooks in Austria, France, Germany, or Switzerland, it was registered as having foreign ancestry. Pursuant to a vote of the ASA members, the term "fullblood" replaced "foreign ancestry" in 1992, without making any reference to the genetic purity required for registration as fullblood.

Plaintiffs testified that they interpreted fullblood to mean that an animal had no known breeds other than Simmental within its pedigree. However, plaintiffs' interpretation does not preclude the ASA from adopting a different definition of fullblood.

Testimony at trial indicated that the members of the ASA disagreed as to how animals should be classified as fullblood. After public comment by the members of the organization, a vote determined that animals whose ancestors could be traced to foreign herdbooks would be deemed fullblood. Brian Kitchen, the chief executive officer of the ASA during the registration of the Risinger animals, testified that prior to the 1994 rule change, fullblood was interpreted as referring to national origin and not genetic purity. He further testified that because the Risinger animals could be traced back to foreign herdbooks, they were properly registered as fullbloods.

Generally, the decision of the classifying organization "will be conclusive and the courts will not intervene." Jackson v. American Yorkshire Club, 340 F. Supp. 628, 635 (N.D. Iowa 1971). Here, the classification was completed with the implied consent of the majority of active membership of the ASA. Throughout the process of adopting the classification rules, plaintiffs had adequate opportunity to address the membership and seek support for their position. Because there is no evidence of illegality in passing either the 1988 foreign ancestry rule, or the 1992 or 1994 fullblood rules, we assume that the animals were properly classified as fullblood. Cf. McCreery Angus Farms v. American Angus Ass'n, 379 F. Supp. 1008, 1019 (S.D. Ill.), aff'd, 506

F.2d 1404 (7th Cir. 1974) (finding judicial intervention appropriate when association did not have "even the most basic and elemental requirements of a fair hearing").

A violation of RICO under 96 U.S.C. § 1962(c), requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted). Mail fraud and wire fraud are within the predicate acts that may constitute "racketeering activity" under RICO. See Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999) (citing 18 U.S.C. § 1961(1)). Plaintiffs claim that the use of the mail and telephone to classify the Risinger animals as fullblood Simmental was a predicate fraudulent act. As stated above, however, the testimony indicates that under the ASA rules the animals were not wrongfully classified. There being no fraud, there is no predicate act to support the allegations of racketeering under RICO. See id. at 407 (citing Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993)).

Plaintiffs allege that defendants violated the Sherman Act, 15 U.S.C. §§ 1 and 4(a), by fraudulently registering the nineteen animals as fullblood. They claim that anticompetitive conduct is apparent from the ASA's approval of the Risinger animals as fullblood. A claim that the ASA wrongfully approved a competitor's animals is insufficient to state a claim for a Sherman Act violation, however. See ECOS Elecs. Corp. v. Underwriters Lab., 743 F.2d 498, 502 (7th Cir. 1984) (explaining that complaints that consumers have been dissuaded from purchasing its products is not enough to state cause of action under the Sherman Act, when allegation is that competitors' products were wrongfully authorized by organization). To show that the ASA committed an "antitrust act" against them, Plainitiffs must show that their animals were barred from registration as fullbloods "on a discriminatory basis from its competitors, or that the conduct as a whole was manifestly anticompetitive and unreasonable." ECOS Elecs., 743 F.2d at 501 (quoting Eliason Corp. v. National Sanitation Found., 614 F.2d 126, 129 (6th Cir. 1980)).

As discussed above, the approval of the Risinger animals as fullblood was not manifestly unreasonable. There was no showing that plaintiffs' animals were unfairly denied registration as foreign registry or fullblood. Although plaintiffs' evidence indicated that some animals that may have qualified as having foreign ancestry under the 1988 rule were not registered as such, many were retroactively registered as having foreign ancestry. Without evidence of discrimination or unreasonableness, plaintiffs failed to meet their burden under the Sherman Act. See, e.g., ECOS Elecs., 743 F.2d at 502-03 (stating that an organization's approval of a competitor's products, without more, cannot constitute an illegal restraint of trade).

Plaintiffs allege Lanham Act violations due to the publication of advertisements identifying the Risinger animals as Fleckvieh.[5] To establish a claim under the false advertising prong of the Lanham Act, a plaintiff must prove: (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiffs have been or are likely to be injured as a result. See United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998) (citing 15 U.S.C. § 1125). "In addition, to recover money damages under the Act, a '[p]laintiff must prove both actual damages and a causal link between defendant's violation and those damages.'" United Indus., 140 F.3d at 1180 (quoting Rhone-Pulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 515 (8th Cir. 1996)).

It is undisputed that advertisements published in the ASA Register stated that the Risinger animals were Fleckvieh. As discussed above, however, we assume that the animals in question were properly labeled as fullblood by the ASA. Because the

_____

[5]Fleckvieh refers to Simmental cattle that can be traced solely to the herdbooks of Germany or Austria.

fullblood label was properly applied to the animals, defendants' representations cannot constitute a literally false claim under the Lanham Act. See United Indus., 140 F.3d at 1180-82. Where advertising is not literally false, the plaintiffs bear "the ultimate burden of proving actual deception by using reliable consumer or market research." Id. at 1183. Plaintiffs presented no evidence that consumers purchased artificial insemination services from the Risinger animals because of a mistaken belief in the genetic makeup of these animals based upon the advertisements. In fact, plaintiffs admitted that none of them had actually purchased the genetic material of the Risinger animals. Absent such a showing, there is no evidence that the advertisements were implicitly false or misleading.

Even if they had established that the animals were improperly classified as fullblood, plaintiffs failed to show that classification of the Risinger animals caused them damages under RICO, the Sherman Act, or the Lanham Act. The only evidence of damages was plaintiffs' testimony that they believed that their sales had dropped because of the introduction of the Risinger animals into the American market. Thus, plaintiffs' claim fails for want of proof. See Sedima, 473 U.S. at 496 (RICO); Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) (Sherman Act); United Indus., 140 F.3d at 1180 (Lanham Act).

## C.

Although plaintiffs contend that they produced sufficient evidence to survive judgment as a matter of law on their negligence claim, we conclude that this claim too fails for want of proof.

## D.

Plaintiffs contend that the district court erred by excluding from evidence certain letters, as well as minutes of ASA meetings. The district court's decision to exclude

-14-

evidence is reviewed for an abuse of discretion.  See Roth v. Homestake Mining Co., 74 F.3d 843, 844 (8th Cir. 1996) (internal quotations omitted).  These exhibits were excluded because of hearsay, lack of foundation, and relevance.  We find no abuse of discretion in the district court's rulings.

## III.

Following the grant of their motion for judgment as a matter of law, defendants moved for attorney fees under the Lanham Act, 15 U.S.C. § 1117, which allows a prevailing defendant to recover attorney fees in "exceptional cases."  Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123 (8th Cir. 1987).  We review the district court's denial of attorney fees for an abuse of discretion.  See Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996).

An exceptional case is one where the plaintiff's claim "is groundless, unreasonable, vexatious, or pursued in bad faith."  Id.  We cannot say that the district court abused its discretion in finding that this is not such a case and in denying the motion for fees.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.