# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1282

_____

| | | |
|---|---|---|
| Everest Capital Limited, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Everest Funds Management, L.L.C.; | * | District of Nebraska. |
| Everest Funds; Vinod Gupta; Everest | * | |
| Investment Management, L.L.C., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  August 26, 2004
Filed:  January 4, 2005

_____

Before LOKEN, Chief Judge, WOLLMAN and BEAM, Circuit Judges.

_____

LOKEN, Chief Judge.

Everest Capital Limited is a Bermuda-based investment advisor that began managing off-shore "hedge funds" in 1990, using the trademark "Everest Capital" in the names of its funds, in letters to investors, and in marketing materials. Some years later, entrepreneur Vinod Gupta formed Everest Investment Management to manage his personal wealth through a collection of limited partnerships in which his family, close friends, and senior employees of his company have participated. Gupta later formed Everest Funds Management, an Omaha-based investment advisor that manages Everest Funds, an entity consisting of two small mutual funds.

In this action, Everest Capital sued Everest Investment Management, Everest Funds Management, Everest Funds, and Gupta (collectively, the "Everest Defendants") asserting federal Lanham Act claims for trademark infringement, trademark dilution, and commercial misrepresentation. 15 U.S.C. §§ 1125(a)(1)(A), (a)(1)(B), and (c). Everest Capital also asserted state-law claims under the Nebraska Consumer Protection Act, NEB. REV. STAT. § 59-1601 *et seq.*; the Nebraska Uniform Deceptive Trade Practices Act, NEB. REV. STAT. § 87-301 *et seq.*; and Nebraska common law. After a jury returned a verdict against Everest Capital on all claims, the district court[1] denied a post-verdict motion for judgment as a matter of law. Everest Capital appeals, arguing insufficient evidence to support the jury's verdict and instructional and evidentiary errors by the court. We affirm.

## I. Background.

**Everest Capital** is an investment advisor whose hedge funds pursue sophisticated strategies that frequently involve emerging foreign markets and distressed and high-yield foreign securities. Since its formation in 1990, Everest Capital has used a mark consisting of the underlined words "Everest Capital," with the underlining forming a stylized mountain peak between the two words. As an unregulated off-shore entity, Everest Capital is prohibited from advertising or marketing its funds or services in the United States. It attracts new United States customers through word of mouth.

At the time of trial, Everest Capital managed three quarters of a billion dollars in assets on behalf of some two hundred wealthy individuals, universities, and foundations. Everest Capital investors must have a net worth of at least one million dollars and usually invest at least a million dollars in an Everest Capital fund. For

---

[1]The HONORABLE THOMAS D. THALKEN, United States Magistrate Judge for the District of Nebraska, who presided by consent of the parties.

example, Everest Capital's founder testified that financier George Soros invested half a billion dollars in Everest Capital funds. Everest Capital's promotional materials warn that its investments are intended for "experienced and sophisticated persons" who are able to bear the risk of impairment or loss of their investments. Its brief on appeal admits that "the potential market [for Everest Capital funds] consists of a small proportion of the investment community, namely sophisticated and accredited investors such as universities and foundations."

**The Everest Defendants.** Everest Investment Management, like Everest Capital, manages private investment partnerships that may invest in a variety of financial instruments. However, except for a brief, unsuccessful marketing campaign aimed at institutional investors, to date Everest Investment Management's partnerships have served almost exclusively as investment vehicles for Mr. Gupta, his family, and close friends and associates. The partnerships have invested in domestic Internet companies, not in risky foreign assets of the type favored by Everest Capital.

Everest Funds Management manages the "Everest Cubed" fund, an index fund that attempts to duplicate the performance of the American securities markets, and the Everest America fund, a conservatively-managed mutual fund that invests primarily in "blue chip" American companies. Both funds are open to investors regardless of net worth and require an initial investment of only $2,000. At the time of trial, each fund managed just three million dollars in assets. Gupta's family owned 98 percent of those assets, and each fund had less than ten investors outside of his family.

The Everest Defendants consistently use the words "Everest Investment Management," "Everest Funds Management," and "Everest Funds" printed in capital letters in a font distinct from Everest Capital's font, and accompanied by a rather fuzzy drawing of Mount Everest in a square border, either above or to the side of the corporate names.

## II. Trademark Infringement.

Neither Everest Capital nor any Everest Defendant has been granted federal registration of its mark. See 15 U.S.C. §§ 1051, 1057, 1115. However, section 43 of the Lanham Act grants to qualifying unregistered marks comparable protection from infringement and unfair competition. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992). To prevail on its claim of trademark infringement, Everest Capital must prove that the Everest Defendants' use of their marks was "likely to cause confusion" as to the origin of their products and services, or whether they are affiliated with Everest Capital. 15 U.S.C. § 1125(a)(1)(A). "The ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." Hubbard Feeds, Inc. v. Animal Feed Supp., Inc., 182 F.3d 598, 602 (8th Cir. 1999).

Most trademark infringement cases come to this court for review of a summary judgment or for review of the grant or denial of injunctive relief. When the likelihood-of-confusion issue is decided by a court, the inquiry is framed by six non-exclusive factors -- "(1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to 'pass off' its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase." Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999); see SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).[2]

In this case, Everest Capital requested a jury trial, and the district court submitted the trademark infringement claims to the jury, without objection. Instruction No. 17 told the jury that, in deciding the likelihood of confusion issue, it

---

[2]Our sister circuits apply similar multi-factor tests. See, e.g., A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 211 (3rd Cir. 2000).

"should consider" the above six factors. The district court further instructed, consistent with our prior decisions, that "[t]he presence or absence of any particular factor should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this." See General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 626 (8th Cir. 1987). The verdict form simply asked whether any Everest Defendant "infringed Everest Capital's trademark rights, pursuant to Jury Instruction No. 17." The jury answered, "No."

**A. Sufficiency of the Evidence.** Everest Capital is entitled to judgment as a matter of law only if "there is no legally sufficient evidentiary basis for a reasonable jury to find" the Everest Defendants not liable for trademark infringement. FED. R. CIV. P. 50(a)(1). In reviewing a post-verdict motion for judgment as a matter of law, the district court "should review the record as a whole [but] disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). We review the district court's denial of a motion for judgment as a matter of law de novo, giving equal deference to the jury's verdict. See R.M. Taylor, Inc. v. Gen. Motors Corp., 187 F.3d 809, 812 (8th Cir. 1999), cert. denied, 528 U.S. 1159 (2000); Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1344 (8th Cir. 1996) (a trademark case).

On appeal, Everest Capital reviews the evidence it submitted regarding each of the six SquirtCo factors and argues that these factors "weigh overwhelmingly in its favor." Perhaps this argument would be sound in the Second Circuit, where likelihood of confusion is an issue of law reviewed *de novo* by the appellate court. See Plus Prods. v. Plus Discount Foods, Inc. 722 F.2d 999, 1004-05 (2d Cir. 1983). But in this circuit, "[l]ikelihood of confusion is a finding of fact." SquirtCo, 628 F.2d at 1091. And properly so, in our view. Though the question is not free from doubt, we agree with the Fourth Circuit that "[t]his pivotal trademark issue is particularly amenable to resolution by a jury . . . . which represents a cross-section of consumers [and] is well-suited to evaluating whether an 'ordinary consumer' would likely be

-5-

confused." Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992). Therefore, because the jury returned what amounts to a general verdict of no trademark infringement, the only issue on appeal is whether the record as a whole, viewed in the light most favorable to the jury's verdict, contains sufficient evidence supporting that verdict. Detailed analysis of each SquirtCo factor is unnecessary.

Viewing the trial record in this light, it is clear that the district court properly denied Everest Capital's motion for judgment as a matter of law. Though each mark uses the dominant word "Everest," that word is part of longer product names that employ different fonts and graphics. See General Mills, 824 F.2d at 627 (fact-finder "must look to the overall impression created by the marks and not merely compare individual features"); Lane Capital Mgmt. v. Lane Capital Mgmt., 15 F. Supp. 2d 389, 395 (S.D.N.Y. 1998) (relevant mark was "Lane Capital Management," not "Lane"). The jury heard evidence that a substantial number of companies, including financial services companies and a hedge fund manager, use marks containing "Everest" in various forms. Compare Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n., 651 F.2d 311, 316 (5th Cir. July 1981). The jury also heard substantial evidence that Everest Capital and the Everest Defendants do not directly compete and that Everest Capital's prospective investors are financially sophisticated and therefore unlikely to invest in Everest Capital's hedge funds without exercising substantial care.

At trial, Everest Capital offered no evidence of actual investor confusion, which is not surprising given its inability to advertise in the United States. Everest Capital did present the results of a Florida survey purporting to demonstrate that potential small investors in one of the Everest Funds would mistakenly assume that the fund is associated with Everest Capital. But defendants vigorously attacked the survey's methodology, and the jury was free to discount its evidentiary weight, or to disregard it entirely. See Calvin Klein Cosmetics Corp. v. Parfums de Coeur, 824 F.2d 665, 669 n.4 (8th Cir. 1987). Finally, though Everest Capital presented some evidence that Gupta was aware of Everest Capital when he founded Everest

Investment Management, knowledge of a competitor does not prove an intent to mislead consumers as to product origins.  See Luigino's, Inc., 170 F.3d at 831.

Having reviewed the trial record as a whole, we agree with the district court that it contains sufficient evidence supporting a finding of no likelihood of confusion.

**B. Jury Instruction Issues**.  Though Instruction No. 17 properly summarized the six SquirtCo factors, Everest Capital argues that the district court abused its discretion by refusing to add additional language proposed by Everest Capital -- that inherently distinctive marks carry a presumption of strength; that similarity should not be assessed by placing the marks side by side; that intent to infringe may be proved by the infringer's conduct after being told to cease and desist; that survey evidence may substitute for actual confusion; that the relevant purchaser is the "ordinary consumer," not the sophisticated investor; that post-sale and pre-sale confusion should be considered in determining likelihood of confusion; that an adverse inference may be drawn from the Everest Defendants' failure to produce certain records;[3] and that the United States Patent and Trademark Office is the "sole government agency having authority over the registration of trademarks."  The district court has broad discretion in instructing the jury.  Our review is limited to determining "whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case

---

[3]This objection is based upon the Everest Defendants' failure to produce documents supporting Gupta's testimony that in 1996 he conducted a computer search of the "Everest" name that did not turn up any financial services companies. Defendants submitted evidence that Gupta discarded the results of this search several years before this lawsuit commenced.  The adverse inference rule applies only "when a party has relevant evidence *within its control* which it fails to produce." Rockingham Machine-Lunex Co. v. NLRB, 665 F.2d 303, 304 (8th Cir. 1981), cert. denied 457 U.S. 1107 (1982) (emphasis added).

to the jury." Mems v. City of St. Paul, 327 F.3d 771, 781 (8th Cir. 2003) (quotation omitted), cert. denied, 124 S. Ct. 1052 (2004).

After reviewing the transcript of the lengthy instructions conference, we are inclined to agree with the Everest Defendants that Everest Capital did not preserve most of these instruction issues for appeal. But in any event, we conclude that Instruction No. 17 fairly and adequately informed the jury of the law relating to its determination of likelihood of confusion. The district court did not abuse its discretion by rejecting the additional language proposed by Everest Capital as either adequately covered by the instructions given, non-essential, potentially confusing, or of dubious validity.

### III. Trademark Dilution.

Everest Capital next argues that it is entitled to judgment as a matter of law on its claim that the Everest Defendants' use of Everest Capital's famous trademark "causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c). Prohibiting trademark infringement protects trademark owners and consumers from likely confusion. Prohibiting trademark dilution, on the other hand, protects the holder of a famous trademark from misappropriation of its investment in the mark. See Luigino's, 170 F.3d at 832. Thus, a claim of dilution by "blurring" does not require proof of competition or likelihood of confusion.

The district court instructed the jury that, to succeed on its claim of trademark dilution, Everest Capital "must show by a preponderance of the evidence . . . (3) That the EVEREST CAPITAL designation is famous in the relevant consumer market; and (4) That there has been an actual lessening of the capacity of the EVEREST CAPITAL trademark to identify and distinguish the Everest Plaintiff's investment management services." Neither party objected to the court submitting this claim to

-8-

the jury.[4] Nor does Everest Capital challenge the court's instruction on appeal. The jury verdict stated that no Everest Defendant "diluted Everest Capital's trademark rights." Thus, the verdict must be upheld if a reasonable jury could find on this record either (A) that the Everest Capital mark is not famous, or (B) that the Everest Defendants did not cause an actual lessening of the mark's capacity to identify and distinguish Everest Capital's services.

**A.** Courts and commentators have struggled to define when a trademark is "famous" for purposes of the Federal Trademark Dilution Act of 1995. See generally 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:92 (Dec. 2003). The Act lists eight non-exclusive factors "a court may consider" in determining whether a mark is famous. 15 U.S.C. § 1125(c)(1). The judicial consensus is that "famous" is a rigorous standard. "Dilution is a cause of action invented and reserved for a select class of marks -- those marks with such powerful consumer associations that even non-competing uses can impinge their value." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). One controversial issue is whether a mark's fame in a limited or "niche" market is sufficient to prove a claim under § 1125(c)(1). See Thane Int'l v. Trek Bicycle Corp., 305 F.3d 894, 908-11 (9th Cir. 2002); Syndicate Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 640-41 (7th

---

[4]The statute provides that "the owner of the famous mark shall be entitled only to injunctive relief...unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2). Damages may be awarded for willful dilution "subject to the principles of equity." 15 U.S.C. § 1117(a). Courts have rejected demands for jury trials when there is insufficient evidence of willful intent or actual damages. See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev., 170 F.3d 449, 465 (4th Cir. 1999); Emmpresa Cubana del Tabaco v. Culbro Corp., 123 F. Supp. 2d 203, 209-10 (S.D.N.Y. 2000). We need not consider the issue in this case. Moreover, even when there is no right to a jury trial, if a dilution claim is tried with other claims that must be submitted to the jury, the court has discretion to submit the dilution claim to the jury on an advisory basis. See FED. R. CIV. P. 39(c).

Cir. 1999). We need not decide that issue here. The district court instructed the jury to determine whether Everest Capital's mark "is famous in the relevant consumer market." The jury, by its adverse verdict, found that it is not.

Everest Capital argues that its mark is famous "within its niche field of investment management" because many news stories in the financial press have ranked Everest Capital's founder as a "top hedge fund manager." This argument borders on the frivolous because it ignores our standard of review. The question is whether a reasonable jury could find that the mark is *not* famous. The jury was free to disregard Everest Capital's selective evidence of its founder's personal renown. Moreover, the record includes evidence that Everest Capital may not advertise in the United States and has a total of only two hundred wealthy clients. On this record, a reasonable jury could clearly find that the Everest Capital mark is not famous in a relevant consumer market. Indeed, the defendants may have been entitled to judgment as a matter of law on this issue.

**B.** The Supreme Court recently confirmed that a claim under 15 U.S.C. § 1125(c)(1) requires proof of actual dilution. The Court went on to hold that, "at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433 (U.S. 2003). Consistent with Moseley, the district court instructed the jury that Everest Capital must prove "an actual lessening of the capacity of [its] trademark to identify and distinguish [Everest Capital's] services." The jury by its adverse verdict found no actual dilution. On appeal, Everest Capital argues that it proved actual dilution as a matter of law because "the names and marks at issue are identical for purposes of trademark law." Based upon our visual examination of the marks, this contention is frivolous. See Savin Corp. v. Savin Group, --- F.3d ---, ---, 2004 U.S. App. LEXIS 25479 at * 25 (2d Cir. 2004) ("a mere similarity in the marks -- even a close similarity

-- will not suffice to establish per se evidence of actual dilution"). The jury reasonably found no proof of actual dilution.

## IV. Commercial Misrepresentation.

Section 43 of the Lanham Act protects a trademark owner from "commercial advertising or promotion [that] misrepresents the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The district court correctly instructed the jury that, to prevail on its commercial misrepresentation claim, Everest Capital must prove that the Everest Defendants made a false statement of fact about their investment management services that deceived or had a tendency to deceive a substantial segment of the audience, that was likely to influence purchasing decisions, and that injured or was likely to injure Everest Capital. See Blue Dane Simmental Corp. v. American Simmental Ass'n, 178 F.3d 1035, 1042 (8th Cir. 1999).

On appeal, Everest Capital argues that it was entitled to judgment as a matter of law based on the undisputed evidence that Everest Funds Management falsely claimed on its website that it provides "professional portfolio management of equity portfolios for high net worth individuals and families, endowments, foundations, and corporate retirement plans." At trial, Gupta admitted that Everest Funds Management has provided no such services; its function instead has been to manage the two small Everest Funds. There was evidence that only 74 people had visited the Everest Funds Management website, and no evidence that those people were eligible to invest in Everest Capital hedge funds. Like the district court, we conclude that a reasonable jury could find that the misstatement was inadvertent, that it did not deceive or have a tendency to deceive a substantial segment of the website's intended audience, that it was unlikely to influence purchasing decisions, and that Everest Capital failed to prove injury or likely injury as a result of the misstatement. We reject as contrary to law Everest Capital's further contention that the district court abused its discretion

-11-

by refusing to instruct the jury that a "literally false" statement is presumed to be likely to deceive.

## V. State Law Claims.

Everest Capital argues that it is entitled to judgment as a matter of law on its claims under the Nebraska Deceptive Trade Practices Act, Nebraska common law, and the Nebraska Consumer Protection Act for the same reasons that it has proved its federal claims under the Lanham Act. As Everest Capital failed to prove its Lanham Act claims, we will not disturb the jury's verdict rejecting the state law claims.

Everest Capital further argues that the district court improperly narrowed the prohibitions of the Nebraska Deceptive Trade Practices Act, NEB. REV. STAT. §§ 87-302(a)(2)-(3), by instructing the jury that a deceptive trade practice is limited to one that causes likelihood of confusion or misunderstanding "as to the source, sponsorship, approval, or certification of services." This technical objection was not properly preserved for appeal. In any event, any error was clearly harmless.

## VI. Two Evidentiary Issues.

Everest Capital first argues that the district court abused its discretion by refusing to admit evidence that the U.S. Patent and Trademark Office suspended Everest Capital's application for registration of its mark because there "may be a likelihood of confusion" between "Everest Capital" and the Everest Defendants' marks. The district court excluded this evidence as unfairly prejudicial. See FED. R. EV. 403. We agree. The Trademark Office suspension notice had little probative value because it stated a tentative opinion, not an administrative finding of fact based upon an adequate record. But the agency opinion had the potential to unfairly prejudice the defendants if the jury mistakenly viewed it as an official government position on the critical confusion issue that the jury had to decide. Thus, excluding

-12-

this evidence under Rule 403 was not a clear abuse of the district court's substantial evidentiary discretion.  See Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304, 1308-10 (8th Cir.),  cert. denied 469 U.S. 1041 (1984).

Second, Everest Capital argues that the district court abused its discretion by refusing to allow Everest Capital to call Gupta's lawyer to testify about "misrepresentations" he made in responding to Everest Capital's cease-and-desist letter.  This contention, too, is without merit.  The court admitted the letter response into evidence and allowed Everest Capital to question Gupta about the significance of the attorney's mistake in describing the corporate relationship between Everest Investment Management and Everest Funds Management.

For the foregoing reasons, the judgment of the district court is affirmed.

_____