**RAINBOW PLAY SYSTEMS, INC., Plaintiff,**

v.

**GROUNDSCAPE TECHNOLOGIES, LLC, Defendant.**

**No. CIV. 03–3411MJDJGL.**

United States District Court, D. Minnesota.

April 12, 2005.

Joanne H. Turner, Mackall, Crounse & Moore, PLC, Counsel for Plaintiff.

Robert W. Kettering, Jr., Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Counsel for Defendant.

## MEMORANDUM OF LAW & ORDER

DAVIS, District Judge.

## I. INTRODUCTION

Before this Court is the motion of Defendant GroundScape Technologies, LLC ("GroundScape") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Rainbow Play Systems, Inc. ("Rainbow") manufactures wooden play systems, and Defendant GroundScape manufactures "rubber ground surfacing," a rubber mulch-like material used under play systems for safety. The Complaint alleges trademark infringement, trade dress infringement, and unfair business practices. GroundScape now moves for summary judgment on all of Rainbow's claims. Oral argument was heard on February 16, 2005. For the reasons outlined below, Defendant's motion is granted in its entirety.

## II. FACTUAL BACKGROUND

Rainbow is one of approximately 300 manufacturers of wooden backyard play systems in the United States. Such play systems retail for between $3,000 and $20,000 and are sold to playgrounds, to schools, and for residential areas. For the first five years of Rainbow's existence (until 1990), it sold systems directly to consumers at home shows, flea markets, and county fairs. By 1994, Rainbow had established 80 dealers nationwide. Rainbow converted 15 of those dealers into distributors who receive a price reduction in exchange for purchasing truckload quantities for resale to dealers in smaller lots. Currently, Rainbow has 27 such distributors servicing some 250 retail dealers. Rainbow recruited half of those distributors, and it asserts that the process of identifying and validating retail dealers is the most difficult aspect of its business.

GroundScape's initial distribution strategy for its rubber ground surfacing was similar to Rainbow's: directly selling to regional dealers and occasionally selling to individual customers. In 2001, GroundScape explored different distribution models. The first model, which included approaching manufacturers Play Nation and Backyard Adventure, failed because neither manufacturer could instruct its independent dealers to sell GroundScape's product.

The second model, dubbed its "Master Distributor program," began when a Rainbow distributor, Michael Keiss of Swings & Things, Inc., ("S & T"), contacted

GroundScape to inquire about distributing GroundScape's products. When GroundScape learned that S & T was also a distributor for Rainbow play systems, GroundScape saw Rainbow's distributors as a "natural fit" for distributing its product.

After GroundScape and S & T had begun working together, Keiss discussed their business relationship with several other independent Rainbow distributors, who then authorized Keiss to give their names to GroundScape. GroundScape contacted six of those independent distributors and invited them to a February 2002 meeting in Cleveland. GroundScape did not ask Rainbow if it would like to distribute GroundScape's product, and that decision was based on Keiss' assessment (confirmed by the six other dealers) that Rainbow would not endorse a non-Rainbow product. GroundScape also states that it did not ask Rainbow's permission to contact Rainbow's dealers because those dealers were independent contractors outside of Rainbow's control. All six independent Rainbow distributors who attended the February 2002 meeting eventually signed contracts to become GroundScape master distributors.

At the February 2002 presentation, two PowerPoint slides entitled "Sales Partnership" and "The Market" contained references to Rainbow. This meeting marked the only time that GroundScape ever used or displayed a Rainbow trademark. In the "Sales Partnership" slide, a subheading entitled "Evaluate Distribution Channels" included the bullet points "Professional/Reputable," "Established Distribution," "Industry Leader," "Nationwide Presence," and "Identify Company Leaders." Below that, GroundScape displayed Rainbow's "Rainbow"-plus-design trademark. In the slide entitled "The Market," GroundScape wrote that "[n]o other company, aside from GroundScape Technolo-

gies is positioned to manufacture, market and distribute this product on a national level." The next bullet point read: "Partnership with dealers of the reputable Rainbow brand will benefit all and exclusivity offered allows dealers to reap a variety of benefits." Rainbow has not presented any evidence showing that these statements confused or misled any attendees as to the relationship, or lack thereof, between Rainbow and GroundScape.

In implementing its distribution plan, GroundScape told its new master distributors they should sell outside the Rainbow network and should not solely sell to dealers they already knew through their affiliation with Rainbow. At the February 2002 meeting, GroundScape provided its new distributors with a universal list of all potential GroundScape retailers within their respective territories. GroundScape's master distributor agreement required each master distributor to establish new and separate sales and distribution companies for the GroundScape product, and those new companies could not have "Rainbow" in their names. Further, the new GroundScape distribution companies were required to establish a new phone number, sales personnel, and management. The GroundScape distributor agreement required each distributor to display GroundScape mulch beneath a minimum of two play structures in each store. No evidence shows that this display requirement caused any consumer to be confused as to the relationship, or lack thereof, between GroundScape and Rainbow.

Rainbow asserts that GroundScape's misrepresentations included a March 2002 letter to Rainbow dealers in Texas, in which GroundScape wrote that its rubber mulch was being sold "exclusively through the Rainbow dealer network." In an April 2002 letter to various Rainbow dealers, GroundScape's Vice President of Sales

and Marketing wrote that it "chose the Rainbow network because they are the premier residential play set dealers in the country and master merchandisers of product," and he related the quality of GroundScape's goods to the quality that customers see in Rainbow's products. In a July 2002 letter to seven distributors, GroundScape's President wrote that GroundScape has "partnered with the best possible people and organization to effectively execute the national distribution of our product lines," and that "the distributor network (seven Rainbow Mega Dealers) is the single most important business component of our company, as you represent our only established distribution channels into the marketplace." Again, Rainbow has not presented any evidence that any recipients of this correspondence were confused, deceived, or otherwise believed that GroundScape was somehow affiliated with Rainbow.

It is undisputed that GroundScape's website listed, as dealers, persons and entities that did not carry GroundScape's product, but GroundScape states that this mistake was due to the representations of some of its overzealous distributors. As a remedy, GroundScape removed from the website the names of all dealers who asked to be removed, and it called every new dealer to confirm that the dealer was, in fact, authorized to sell GroundScape products. Again, Rainbow has not presented any evidence that any person or entity was deceived or otherwise confused by this temporary website posting.

GroundScape undisputedly posted a photograph of a Rainbow play system on its website—though it digitally altered Rainbow's trademarked tri-colored tarp to an all-yellow design, and it digitally removed the "Rainbow" plus design mark. Rainbow has not provided any evidence that any person was deceived or confused by this posting or alteration of the play system.

GroundScape discontinued its master distributor program in 2003, after its distributors were unable to perform their contractual requirements. GroundScape currently sells its products directly to residential and commercial dealers while simultaneously providing them with warehousing and installation services.

Throughout the existence of GroundScape's master distributor program, the percentage of GroundScape's dealers who were also Rainbow dealers never exceeded 11.3%, and GroundScape's annual sales from mutual independent dealers never exceeded 35.6%. And throughout the relevant period, GroundScape has only sold goods to 32 of Rainbow's 250 dealers.

GroundScape did not realize a profit in any year from 2001 through 2004. Rather, it has suffered over $2.5 million dollars in net losses.

## III. DISCUSSION

### A. Summary Judgment Standard

When considering motions for summary judgment, a court must determine "whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 565 (8th Cir.2000); *see* Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

For these purposes, "[t]he non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record," though

"[t]he non-moving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial." *Palesch*, 233 F.3d at 565–66 (citations omitted).

## B. Federal Unfair Trade Practices

Rainbow first alleges that GroundScape breached Section 43(a) of the Lanham Act by intentionally making false statements to potential dealers, distributors, purchasers, and consumers—leading them to believe that GroundScape's products are "affiliated, connected, endorsed, sponsored, approved, or otherwise associated with Rainbow."

Under 15 U.S.C. § 1125(a)(1) (Section 43(a) of the Lanham Act),

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

■ To prevail in a false-advertising or unfair-competition claim under either the Lanham Act or Minnesota law, Rainbow must demonstrate that (1) GroundScape made false statements of fact about its own product or Rainbow's product in a commercial advertisement, (2) the statements actually deceived or tended to deceive a large segment of its audience, (3) GroundScape's deception was likely to influence buying decisions, (4) GroundScape caused the false statement to enter interstate commerce; and (5) Rainbow has been or is likely to be injured as a result. *LensCrafters, Inc. v. Vision World, Inc.*, 943 F.Supp. 1481, 1488 (D.Minn.1996); *see also* Lanham Act § 43(a). To demonstrate liability under the Lanham Act, each of these factors must be satisfied.

GroundScape argues that its February 2002 sales presentation to six potential distributors was not a commercial advertisement, so the statements and slides cannot be considered evidence of unfair trade practices. GroundScape further contends that, even if the Court determines the sales presentation was a "commercial advertisement," GroundScape made no "literally false" statements—thereby initiating Rainbow's burden to "prov[e] actual deception by using reliable consumer or market research." *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1043 (8th Cir.1999) (quotation omitted). Lastly, GroundScape asserts that Rainbow has failed to present any consumer or market research, or any other evidence that GroundScape actually deceived a large segment of the audience, likely influenced buying decisions, caused goods to enter interstate commerce, or injured Rainbow in any other way.

### 1. Injury Resulting from Alleged False Advertising or Unfair Competition

■ GroundScape asserts that Rainbow is unable to show that it has suffered

any injury, damages, or loss of goodwill as a result of GroundScape's actions or statements. To recover money damages under the Lanham Act, a plaintiff "must prove both actual damages and a causal link between defendant's violation and those damages." *Blue Dane Simmental Corp.*, 178 F.3d at 1042 (quotations omitted). Recovery is prohibited if a plaintiff fails to prove that a defendant's actions caused the harm claimed. *Rhone–Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 515 (8th Cir.1996). To sustain a claim for money damages, a plaintiff bears the full burden of showing injury and causation. *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1334 (8th Cir.1997)

GroundScape argues that the only damage that arguably could have resulted would amount to "a strain on the relationship between the Rainbow corporate and the Rainbow exclusive distributors." But Rainbow has failed to provide any evidence that such a strain has ever existed, and even if it did, the record does not show that it resulted in even a single dollar in damages. Similarly, the record contains no evidence that any of GroundScape's actions caused even one dealer to switch from Rainbow to a competing company, led any dealer to reduce its business with Rainbow, or otherwise caused Rainbow any damage or injury.

Rainbow has also failed to demonstrate a prima facie federal unfair trade practices claim because it has not shown that GroundScape's profits, if any, resulted from its alleged misrepresentations. The record reflects that GroundScape did not realize a profit in any year from 2001 through 2004, and it has instead suffered over $2.5 million dollars in net losses. Consequently, Rainbow has failed to show sufficient evidence that it is entitled to GroundScape's revenue or profits, if any exist, from the alleged misrepresentations.

Because the record contains no evidence demonstrating that Rainbow has suffered any actual injury or damages, and because the record contains no other genuine issue of material fact, judgment as to Rainbow's claim for unfair trade practices is appropriate as a matter of law.

### 2. Willfulness of GroundScape's Actions

■ Rainbow contends that it need not demonstrate actual damages if GroundScape acted "willfully," in which case it would be entitled to an award of GroundScape's profits or revenues resulting from its alleged misrepresentations. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 n. 10 (8th Cir.1999). Rainbow asserts that GroundScape's willfulness is shown by its use of Rainbow's distributors to gain national distribution, and by its use of Rainbow's trademarks.

■ The record contains no evidence that GroundScape's statements were willfully misleading in context, or that they deceived or misled a significant portion of the recipients. As noted above, if GroundScape's statements are not literally false—and none of the statements here fit that characterization—then Rainbow bears the burden of proving actual deception through the use of consumer or market research. *Blue Dane Simmental Corp.*, 178 F.3d at 1043. Other courts have similarly held that the preferred measure of a false advertising claim is the public's reaction as demonstrated through a consumer survey. *See Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 39 (1st Cir.2001) (holding that surveys are the "preferred" manner of demonstrating secondary meaning); *cf. Cellular Sales, Inc. v. Mackay*, 942 F.2d 483 (8th Cir.1991) (holding that courts will assess secondary meaning through direct evidence or surveys). But Rainbow has conducted no

such research or surveys, and it has not otherwise provided evidence showing that GroundScape's statements were either explicitly or implicitly false, misleading, or willful. Without any showing of willfulness, and absent any showing of actual damages or other injury resulting from GroundScape's alleged actions, summary judgment as to Rainbow's Federal Unfair Trade Practices claim is appropriate.

## C. Federal Trademark Infringement

### 1. Trademark Claims, Generally

Rainbow next asserts two trademark claims: one regarding GroundScape's February 2002 presentation, and another regarding marks allegedly used in showrooms and on GroundScape's website. Rainbow's three registered trademarks include a color mark consisting of contiguous, equally proportioned red, yellow, and blue bars; a design-plus-word mark consisting of the word "Rainbow" along with the sun, clouds, and a rainbow; and the word mark "Rainbow Play Systems, Inc."

■ An owner of a registered mark may sue for infringement of that mark. Lanham Act § 32, 15 U.S.C. § 1114(1)(a); *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). For Rainbow to prevail in its infringement claim, it must show (1) that GroundScape used Rainbow's trademarks in commerce and (2) that GroundScape's use of Rainbow's marks was likely to cause confusion. *See Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F.Supp.2d 1146, 1148 (D.Minn.2001).

■ If infringement is found, the plaintiff is entitled to recover defendant's profits resulting from that infringement, as well as recovery of any damages suffered by the plaintiff and costs. 15 U.S.C. § 1117. In assessing profits, a plaintiff is required to prove the defendant's sales, and that defendant must prove all elements of cost or deduction claimed. *Id.* In

assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. *Id.*

■ The remedies under 15 U.S.C. § 1117 are intended to make violations of the Lanham Act unprofitable, not to act as a penalty. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 742 (7th Cir.1985). In Lanham Act cases, a court has wide discretion in fashioning an appropriate remedy. *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1222 (10th Cir.1998); *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092 (7th Cir.1994).

### 2. Likelihood of Confusion

To prevail on its claim of trademark infringement, Rainbow must prove that GroundScape's use of its marks was likely to cause confusion either regarding the origin of its products and services, or confusion as to whether those products were affiliated with Rainbow. 15 U.S.C. § 1125(a)(1)(A); *see Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759 (8th Cir.2005) ("The ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product.").

■ To assess whether a likelihood of confusion exists, a court uses the following non-exclusive factors:

(1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to 'pass off' its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

*Everest Capital Ltd.,* 393 F.3d at 759–60 (quotation and citation omitted). None of these factors, alone, is dispositive. *Transclean Corp. v. Bridgewood Servs., Inc.,* 77 F.Supp.2d 1045, 1092 (D.Minn.1999), *affirmed in part, vacated in part on other grounds* by 290 F.3d 1364. The ultimate determination of whether an accused infringer's activity created the likelihood of confusion is a question of law. *First Nat'l Bank in Sioux Falls v. First Nat'l Bank, South Dakota,* 153 F.3d 885, 888 (8th Cir. 1998).

### (a) Incidents of Actual Confusion

 As noted above, Rainbow has failed to provide affidavits, surveys, or any other evidence that even one person—either a consumer or a distributor—was confused by GroundScape's use of its trademarks. The Eighth Circuit has noted that evidence of actual confusion "is perhaps the most effective way to prove a likelihood of confusion." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,* 182 F.3d 598, 602–03 (8th Cir.1999) (citations omitted).

The record contains no evidence that any entity was deceived or otherwise confused as a result of any of GroundScape's allegedly infringing activities. Rainbow notes a single customer's e-mail apparently seeking GroundScape's assistance for warranty coverage of a Rainbow product, but neither the e-mail itself nor any other proffered evidence demonstrates that any GroundScape act alleged formed the basis for that e-mail. Rainbow stated in response to discovery that it "has no knowledge of any specific instance in which a consumer has been confused or mistaken between the products advertised or sold by Rainbow and GroundScape." (Def. Exh. 6 at Interrog. 7.) In the same way, the record is bereft of any evidence showing that any distributor or master distributor was confused by GroundScape's actions. Lastly, the record contains no inquiries, investigations, surveys, evaluations, or studies to support Rainbow's trademark claims. Absent evidence that any consumer, distributor, or member of the public either was confused or would likely be confused by GroundScape's alleged use of Rainbow's trademarks, this factor strongly favors GroundScape.

### (b) Intent to "Pass Off" Goods

A primary purpose of trademark law is to prevent one person from passing off his goods or business as those of another person. *Am. Steel Foundries v. Robertson,* 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317 (1926). But mere knowledge of a competitor does not demonstrate an intent to mislead consumers as to product origins. *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 393 F.3d 755, 761 (8th Cir. 2005).

Rainbow argues that GroundScape's seeking out independent Rainbow distributors, its various statements to them, and its display requirement indicate GroundScape's intent to pass off its goods as coming from Rainbow. But these actions, alone, are not sufficient to demonstrate that GroundScape intended to pass itself off as being affiliated with Rainbow. Rather, Rainbow has not shown GroundScape's intent to confuse or deceive as required under this element.

In contrast, the record demonstrates that GroundScape took great efforts to ensure that its master distributors distinguish the Rainbow and GroundScape entities: requiring them to establish new and separate sales and distribution companies; insisting that they obtain new phone numbers, sales personnel, and management; and prohibiting the distributors from using the term "Rainbow" in their names. These requirements demonstrate that, rather than intending to "pass off" their goods as being affiliated with Rainbow,

GroundScape sought to eliminate customer confusion between the two companies.

### (c) Similarity of Marks, Type of Product, Cost, and Conditions of Purchase

Rainbow claims that GroundScape's actions were likely to cause confusion because of the distinctiveness of its marks and the complimentary nature of the parties' goods. But the products are undisputedly dissimilar in appearance, function, and use, and Rainbow has failed to provide any evidence in the form of affidavits or surveys showing any likelihood of confusion for consumers or distributors. As such, this element favors GroundScape.

### (d) Competition Between Products

The record demonstrates that the parties' products do not compete, in that Rainbow does not sell ground cover, and GroundScape does not sell play systems. To prove a likelihood of confusion where the products do not compete with each other, a plaintiff must demonstrate a greater degree of similarity than where the products are in direct competition. *Cf. Am. Dairy Queen Corp. v. New Line Prods., Inc.,* 35 F.Supp.2d 727, 731 (D.Minn.1998); *see also SquirtCo. v. Seven–Up Co.,* 628 F.2d 1086, 1091 (8th Cir. 1980). Because the products do not directly compete, and because they are completely dissimilar in nature and function, this element strongly favors GroundScape.

Because the record contains no evidence that any consumer or distributor was deceived or otherwise confused by any of GroundScape's activities; that any distributor or master distributor was confused; or that the claims are supported by inquiries, investigations, evaluations, studies, or surveys, Rainbow has failed to provide evidence showing a likelihood of confusion.

### 3. Lack of Damages or Resultant Profits

As noted above, Rainbow also fails to demonstrate that it has suffered any actual damages as a result of GroundScape's alleged trademark infringement. *See Caesars World,* 520 F.2d at 275 (holding absence of actual damages precluded additional damages recovery). Further, punitive or exemplary damages are inappropriate where a plaintiff has failed to demonstrate any actual damages. *Caesars World, Inc. v. Venus Lounge, Inc.,* 520 F.2d 269, 275 (3d Cir.1975) (holding that damages provision in section 1117 assumes actual damages, and absent such damages, compensatory and exemplary damages are inappropriate).

Similarly, Rainbow has failed to present any evidence that any of GroundScape's profits (or lack thereof) were obtained as a result of the alleged trademark infringement. The accounting of a defendant's profits is not automatic but must be viewed in light of equitable considerations. *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1405 (9th Cir.), *cert. denied,* 510 U.S. 815, 114 S.Ct. 64, 126 L.Ed.2d 34 (1993). Here, GroundScape has borne its burden of demonstrating that it suffered over $2.5 million dollars in net losses in the years 2001 through 2004. But Rainbow has not sufficiently countered with a showing that any profits exist, and even if any profits were present, Rainbow has failed to provide any evidence of a causal connection between those profits and GroundScape's alleged trademark infringement.

As such, and because Rainbow has failed to demonstrate a likelihood of confusion, judgment as to Rainbow's trademark infringement claim is appropriate as a matter of law.

## D. Federal Trade Dress Infringement

Rainbow next alleges that GroundScape infringed its unregistered trade dress in two ways: (1) by displaying an altered but recognizable Rainbow play system on its website; and (2) by requiring GroundScape distributors to display GroundScape products under play systems, which Rainbow argues is a de facto requirement that the parties' products be placed near each other.

Rainbow has not registered any claimed trade dress with the U.S. Patent & Trademark Office, but it asserts that the following are unregistered elements of its trade dress: various qualitative descriptions, its "A-frame" and "castle" designs and materials, its slide, its use of "big beam" redwood and red cedar, its bracketing and bolt system, its "shaped disk and rope swing," its vertical-rail spindles, and its sandbox. It is undisputed that other play set manufacturers use the same or similar trade dress elements in their products.

### 1. Trade Dress Infringement, Generally

In an action under the Lanham Act, 15 U.S.C. § 1125, for trade dress infringement, a plaintiff is generally required to prove: (1) that the plaintiff has a protectible interest in its trade dress design, which will be established by evidence that the design (a) is inherently distinctive or is at least descriptive and has acquired secondary meaning among consumers, and (b) is not functional; and (2) that the defendant's use of a similar trade dress design is likely to cause confusion among consumers as to the source of the parties' goods or services.

### 2. Functionality of Rainbow's Trade Dress

Under Section 1125(a)(3) of the Lanham Act, a plaintiff asserting trade dress protection for its unregistered trade dress bears the burden of proving that the matter sought to be protected is not functional, as dress protection may not be claimed for functional product features. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). An element of trade dress is nonfunctional "if it is an arbitrary embellishment primarily adopted for purposes of identification and individuality." *Ott v. Target Corp.*, 153 F.Supp.2d 1055, 1063 (D.Minn.2001) (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 873 (8th Cir.1994)). The Supreme Court has noted that "product design almost invariably serves purposes other than source identification." *TrafFix Devices*, 532 U.S. at 29, 121 S.Ct. 1255 (quoting *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000)). As such, a feature is considered to be functional if protection of that feature would hinder competitors or would impinge upon the rights of others to compete effectively. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1248 n. 6 (8th Cir.1990). But if a competitor can effectively compete without copying a particular feature or a combination of features, then the trade dress is nonfunctional. *Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F.Supp.2d 886, 894 (D.Minn.1999).

GroundScape is convincing in its argument that all of Rainbow's allegedly protected elements—the slide, A-frame design, materials, brackets, and various other elements—are utilitarian by design and, therefore, functional. As such, each of them is non-protectible under section 1125(a)(3). Rainbow cites *Empi, Inc. v. Iomed, Inc.*, 923 F.Supp. 1159, 1164 (D.Minn.1996) for the proposition that merely because a feature serves a "utilitarian function" does not necessarily undermine its status as legally recognizable trade dress. But *Empi* went on to hold

that the proper inquiry is characterized as "whether the combination of features, the overall shape and design of plaintiff's product, is adopted for purposes of identification and individuality." *Empi,* 923 F.Supp. at 1164. Said another way, the question is whether the plaintiff's "shape and design, although they serve useful purposes, are primarily adopted to distinguish its product from those of its competitors." *See id.* As such, trade dress is nonfunctional "if it is an arbitrary embellishment primarily adopted for purposes of identification and individuality." *Aromatique,* 28 F.3d at 873.

The elements here are not "arbitrary embellishments" designed to distinguish Rainbow's products from its competition. Rather, the slide, A-frame design, materials, brackets, and other elements serve as structural components that cannot be protected without unfairly squelching competition. Clearly, Rainbow cannot successfully assert that they have a monopoly on such elements as a slide or big-beam lumber to the exclusion of its competitors. Plaintiff Rainbow has failed to show that any of the elements at issue serve a purely nonfunctional, distinguishing role in its products, other than arguing that it serves to enhance those products' "quality." Indeed, the very "quality" that these elements demonstrate involves their structural support in creating a stronger product—thereby weakening Rainbow's argument that the elements are non-functional source identifiers. If a competitor were prohibited from using slides, big beam lumber, sandboxes, swings, or Rainbow's other claimed trade-dress elements, this would clearly hinder its competitors' ability and right to compete effectively. *See Woodsmith Publ'g,* 904 F.2d at 1248 n. 6. Accordingly, the elements of Rainbow's asserted trade dress are functional and nonprotectible.

### 3. Lack of Damages

Like in claims for unfair trade practices, a plaintiff in an action for trade dress infringement may recover any profits obtained by the defendant as a result of the infringement. 15 U.S.C. § 1117. But as noted above, Rainbow has failed to present any evidence showing that it has suffered any damages from GroundScape's alleged infringement of its trade dress. Further, Rainbow provides no evidence to dispute GroundScape's showing that it has not realized a profit in any year from 2001 through 2004, but that it has instead suffered over $2.5 million dollars in net losses.

Because the elements of Rainbow's unregistered trade dress consist of functional and, as such, unprotected elements, and because the record contains no dispute of genuine material fact regarding Rainbow's lack of damages or any causal connection between GroundScape's profits (or lack thereof), summary judgment as to Rainbow's trade dress claim is appropriately granted.

### E. State–Law Claims of Deceptive Trade Practices and False Advertising

■ Rainbow next alleges that GroundScape's actions constitute deceptive trade practices and false advertising in violation of Minn.Stat. §§ 325D.43 et seq. & 325F.69, respectively. Under section 325D.44, a deceptive trade practice includes causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; and representing that goods or services have sponsorship or approval they do not have. Section 325F.69 bars false advertising through the use of any misrepresentation or misleading statement in connection

with the sale of merchandise. Conduct that violates the Lanham Act also violates Minnesota's Deceptive Trade Practices Act. *Goddard, Inc. v. Henry's Foods, Inc.,* 291 F.Supp.2d 1021, 1039 (D.Minn.2003). Claims for deceptive trade practices under Minnesota statute require the same analysis as claims under federal Lanham Act. *Group Health Plan, Inc. v. Philip Morris, Inc.,* 68 F.Supp.2d 1064, 1069 (D.Minn. 1999).

Rainbow bases its state-law arguments solely on those made above regarding the Lanham Act claim. For the same reasons outlined above regarding the Federal Unfair Trade Practices and Federal Trade Dress Infringement claims, GroundScape is entitled to summary judgment under Minnesota's Deceptive Trade Practices Act. As noted above, Rainbow has not established a prima facie demonstration that GroundScape infringed any Rainbow mark or was likely to cause confusion, mistake, or deception as to an affiliation, connection, or association between GroundScape and Rainbow. And because Rainbow has not shown that its product design is nonfunctional or has acquired secondary meaning, it cannot prevail on its claim of trade dress infringement.

As noted above, Rainbow has not established a prima facie showing that it is entitled to any damages, either from damage to its goodwill or through GroundScape's profits or revenue. Again, Rainbow has undisputedly failed to conduct any consumer survey or market research regarding the effect, if any, of GroundScape's actions; the record contains no direct or indirect evidence tending to show that it has suffered any damages as a result of GroundScape's actions; and the record contains no evidence demonstrating GroundScape obtained any profit as a result of the actions in dispute. Accordingly, judgment as to Rainbow's state-law decep-

tive trade practice and false advertising claims is appropriately granted.

**F. Misappropriation of Goodwill**

Rainbow's next claim is that GroundScape misappropriates Rainbow's goodwill by relying on Rainbow's dealers and distributors to generate GroundScape's sales. Rainbow asserts that the use of its marks deceived potential dealers and distributors into entering into contracts with GroundScape and purchasing products from GroundScape, resulting in a loss of goodwill attached to its marks.

██ Misappropriation of goodwill is generally only an element of trademark, trade dress, or unfair/deceptive trade practices claims; it is not a claim in and of itself. Rainbow does not provide, and this Court has not found, any authority in support of pleading "misappropriation of goodwill" as a separate claim. Further, neither party cites any statute or caselaw supporting their arguments, and independent research similarly finds no such support. And as noted above, Rainbow has not demonstrated that it has suffered any damage, or that it is entitled to GroundScape's revenue or profits, if any exist. Again, Rainbow does not counter GroundScape's evidence that it has not had any profits from 2001 through 2004.

██ Even assuming that "misappropriation of goodwill" is a legitimate claim, Rainbow has presented no genuine issue of material fact as to (1) GroundScape's lack of exclusive reliance on Rainbow dealers and distributors, (2) GroundScape's claims that it has incurred the normal costs and delays related to developing a network of dealers and distributors, and (3) GroundScape's showing that, at most, only 11% of its dealers were also affiliated with Rainbow. Further, Rainbow has not identified any potential dealers or distributors who

were deceived or otherwise misled by GroundScape's statements or actions.

In light of the above, the record contains no genuine issue of material fact regarding Rainbow's claim of misappropriation of goodwill, and GroundScape is entitled to judgment as a matter of law.

### G. Tortious Interference with Contractual Relations

■■■ Rainbow asserts that GroundScape's actions "constitute tortious interference with Rainbow's existing and potential contractual relationships." Under Minnesota law, a defendant is liable for tortious interference with contractual relations if it caused a third party to breach its contract with a plaintiff, if its actions made it more difficult for a third party to perform under its contract with a plaintiff, or if its actions made performance of the contract less valuable to a plaintiff. *Continental Research, Inc. v. Cruttenden, Podesta & Miller*, 222 F.Supp. 190, 197–98 (D.Minn.1963) (citing *Snowden v. Sorensen*, 246 Minn. 526, 75 N.W.2d 795, 799 (1956); *Royal Realty Co. v. Levin*, 244 Minn. 288, 69 N.W.2d 667, 671 (1955)).

■■■ Rainbow asserts that GroundScape's requirement that dealers display and use its mulch under two systems effectively interfered with Rainbow's distributor agreement, which prohibits Rainbow's dealers from using its trademarks to market, distribute, or sell any non-Rainbow products.

However, Rainbow has not identified one fact or document supporting its argument that GroundScape has interfered with any of its contracts; no evidence supports any inference that GroundScape interfered with any contract; and—as analyzed more fully above—the record does not demonstrate any damages stemming from GroundScape's alleged actions. As such, the record contains no genuine issue of material fact as to Rainbow's claim of tortious interference with contractual relations, and summary judgment is appropriate as a matter of law.

### H. Unjust Enrichment

■■■ Rainbow lastly alleges that GroundScape has been unjustly enriched by its unfair trade practices, as well as trademark and trade dress infringement. To prevail on a claim of unjust enrichment, a plaintiff must show that a defendant knowingly received something of value that it was not entitled to, and that it would be unjust for the defendant to keep those benefits. *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 613 (8th Cir.1998) (citing *Southtown Plumbing, Inc. v. Har–Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn.Ct.App.1992)). "Unjust" may mean illegal or unlawful, or simply that it would be morally wrong to allow a defendant to enrich itself at a plaintiff's expense. *Gallinger v. North Star Hosp. Mut. Assur., Ltd.*, 64 F.3d 422, 426 (8th Cir.1995) (citations omitted).

■■■ "An unjust enrichment claim does not lie merely because one party benefits from another's efforts or obligations; rather 'it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.'" *Custom Design Studio v. Chloe, Inc.*, 584 N.W.2d 430, 433 (Minn. App.1998) (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981)). Recovery for unjust enrichment may include either costs avoided by a defendant or the net enrichment that the defendant received. *Cooley v. Major Media Mgmt. Corp.*, 402 N.W.2d 815, 817 (Minn.Ct.App.1987).

■■■ Rainbow alleges that the strength of its trademark and trade dress infringement allegations, as well as GroundScape's avoiding the costs of establishing a distribution network, demonstrate that Rainbow

is entitled to the costs that GroundScape allegedly avoided and received. Rainbow argues that it sufficiently established a damages amount in discovery by listing its costs of establishing its distributor network, as well as GroundScape's millions of dollars in guaranteed financing obtained by taking advantage of Rainbow's trademarks, trade dress, and distributor network.

But the record also demonstrates that Rainbow has not undertaken any effort to determine how GroundScape has been unjustly enriched. And again, the record is devoid of evidence showing a causal relationship between the statements and actions alleged and any enrichment to GroundScape. As noted above, the undisputed record demonstrates that only 11% of GroundScape's dealers were also Rainbow dealers, and it remains undisputed that GroundScape did not realize a profit in any year from 2001 through 2004. Further, Rainbow has failed to bear its burden of showing that GroundScape's actions, even taken as true, have caused any unjust enrichment, or the extent of that enrichment.

As a matter of law, the record does not include sufficient evidence demonstrating GroundScape's avoided costs or unjust enrichment resulting from the acts alleged. Accordingly, Rainbow has not established a prima facie showing of unjust enrichment, and summary judgment is appropriately granted.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that GroundScape Technologies' Motion for Summary Judgment [Docket No. 9] is **GRANTED** in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**